IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

KASSANDRA MEMMER,        )
                            )
          PLAINTIFF,     )    CIVIL ACTION NO. _____
                            )
   vs.                  )
                            )    HON.
UNITED WHOLESALE
MORTGAGE,               )
                            )
          DEFENDANT.    )
_____)

## COMPLAINT

PLAINTIFF, KASSANDRA MEMMER, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against UNITED WHOLESALE MORTGAGE.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes her demand for trial by jury.

## JURISDICTION

1.     At all times relevant to this complaint, PLAINTIFF KASSANDRA MEMMER was a resident of Genesee, County in the State of Michigan.

2.     DEFENDANT UNITED WHOLESALE MORTGAGE is a domestic limited liability company, which has a place of business at 585 South Blvd., E. Pontiac, MI 488341.

3.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

**VENUE**

5.     Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

6.     Plaintiff began working for Defendant as a conventional mortgage underwriter II on September 30, 2019.

7.     In November 2019, Plaintiff told leaders about brokers inappropriately watching "U-Snap" videos multiple times at odd hours of the night, to which Plaintiff was told there was nothing that could be done.

8.     Plaintiff worked from home during the COVID-19 shut down in March 2020.

9.     In July 2020, Plaintiff returned to the office despite not being conformable working in person because Defendant was not following COVID-19 safety guidelines.

10.     Plaintiff was told that the only way she could be promoted to a senior was to come to in person training.

11.     In August or September of 2020, Plaintiff was promoted to senior underwriter.

12.     When Plaintiff initially started with the company, she was making an hourly rate with bonus and overtime options.

13.     When Plaintiff became a Senior Underwriter, she was put on salary with eligibility to make a bonus based on the number of files that she initially underwrote.

14.     Plaintiff had to work a lot of overtime hours to finish files that she was working on to hit her "commitment" (i.e., goal) for the day, since she could not leave for the day at her scheduled time if a file was not completed and if she did not hit her commitment.

2

15.     Some days were extremely difficult to hit her commitment on time based on the file for which she was selected.

16.     Every file was different and would take me a different amount of time to complete.

17.     Plaintiff would also have to work either earlier or later on in the day if she had to train a new Senior Underwriter, for which she was not compensated, and she also had to stay later with no compensation in order to do evaluation sheets for the trainees.

18.     Plaintiff and other underwriters were also required to do something Defendant called "Rise and Grind," which meant coming into work earlier or staying two hours more than the employee's scheduled time, but with no compensation.

19.     This continued during the remainder of Plaintiff's time working for Defendant.

20.     Plaintiff bought a home with her significant other in October 2020, and Defendant processed the loan.

21.     During the process of buying her first home, Defendant became aware of the fact that Plaintiff's significant other was transgender.

22.     After Plaintiff completed training, she began working from home again while she started her fertility treatments as a precaution, because COVID-19 was getting worse and spreading through Defendant's office at a rapid rate.

23.     In January 2021, MIOSHA investigated Defendant for not following COVID-19 safety guidelines.

24.     Multiple employees reported the safety violations to FOX 2 News station.

25.     Two months later, Plaintiff found out she was pregnant but did not tell Defendant because it was too early in the fertility process.

26.     In April 2021. Plaintiff was given the option to become a Jumbo Underwriter, but she heard that it was a very stressful team, and she did not want to put herself through added stress early on in her pregnancy. Leader Matthew Reno stated that it was understandable, that Plaintiff did not have to go, and it was just an option.

27.     Later, Plaintiff was told that denying the Jumbo Underwriter position did not look good to Defendant and that Defendant was going to start making people do jumbo underwriting.

28.     Finally, in May 2021, Plaintiff informed Defendant that she was pregnant.

29.     Plaintiff was offered an optional promotion to team lead, and Plaintiff informed Defendant that she would consider it after her maternity leave because she did not want to add extra stress during her pregnancy.

30.     Upon information and belief, Defendant was not happy with Plaintiff's decision not to take the team lead job at that time.

31.     Plaintiff contacted human resources in regards to switching to another department because she was under a lot of stress with the brokers screaming at her and for denying the team lead position.

32.     Plaintiff told team lead Matthew Reno and division lead Sean Hagan that she was interested in job shadowing other departments to possibly transfer to another department.

33.     Hagan stated that she could still job shadow but that he did not understand why she did not want to be a team lead and stay in underwriting.

34.     Plaintiff spoke with human resources about setting up job shadows and went into more detail about other positions, and human resources stated that underwriting might not let her transfer anyway since they did not like to transfer people out of underwriting.

35.     Plaintiff sent "U-Snaps" to the broker and was uncomfortable sending them from her home. The broker started contacting her via e-mail and hitting on her, stating that she was too pretty to be an underwriter and that he was going to tell her CEO Matt Ishbia to make her a model for the company.

36.     Plaintiff informed Tyler Creager, leader filling in for her leader for the day, about e-mail that she received from broker and he stated that it's just best that she just laugh about it and forget about it. This incident was never reported, although it should have been.

37.     Plaintiff sent a text to Tyler Creager stating that things were changing at United Wholesale Mortgage and she was afraid to go back into the office due to COVID-19 safety guidelines not being followed.

38.     In June 2021, Plaintiff gave Defendant her doctor's note outlining her leave of absence in order to insure her health and that of her unborn child.

39.     In June of 2021, Defendant started removing barriers from desks, removing hand sanitizer machines, and not being strict on mask mandates.

40.     Team lead Matthew Reno told Plaintiff that he did not see an issue with the doctor's note and allowing her to work from home, but that he needed to pass it along to the division lead, Sean Hagan, and the AVP Matthew Shelton for further review.

41.     Other employees were allowed to work from home, such as Bre Lobodzinski.

42.     AVP Matthew Shelton and VP Agnes Standowicz denied Plaintiff's doctor's note with no explanation, and when asked by the team lead for further explanation, they said that no exceptions will be made for anyone to work from home and that Defendant is not a work from home company.

43.     Team Lead Matthew Reno and Plaintiff had conversations about working from home and Matthew Reno knew how upset Plaintiff was. Reno also stated that he did not understand why they denied the request and that he was upset because he felt that it should have been approved.

44.     Defendant made it known that if employees did not return to work on July 9, 2021, that Defendant would take that as an automatic resignation.

45.     Plaintiff quit on July 9, 2021 and had a discussion with Matthew Reno about quitting. He stated that he was not surprised that she quit because they were basically pushing her to quit by not allowing her to working from home. She had no choice, she either chose her family or her job.

46.     In July 2021 Plaintiff did not receive her final bonus for the month of June for files completed over daily commitment.

47.     Around April 2020 Plaintiff filed a charge of Discrimination with the EEOC against Defendant.

48.     January 19, 2023 the EEOC issued Plaintiff a right to sue letter and this lawsuit followed.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

49.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

50.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

51.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

52.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

53.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported to human resources active racial discrimination by Defendant.

54.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

55.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts.

56.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

57.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

58.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

59.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

60.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELCRA

61.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

62.     At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

63.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

64.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

65.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported to human resources active racial discrimination by Defendant.

66.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant.

67.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts.

68.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

69.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

70.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

71.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

72.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

### HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII

73.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

74.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

75.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

76.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

77.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

78.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving made the situation untenable.

79.     The communication and conduct were unwelcomed.

80.     The unwelcomed conduct and communication were intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile. and offensive work environment, as alleged in the statement of facts.

81.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

83.     Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT IV
### HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA

84.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

85.     At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

86.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

87.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

88.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

89.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to ignore Plaintiff's grievances made the situation untenable.

90.     Additionally, Defendant's treated female employees, such as Plaintiff, in a hostile, intimidating, and offensive way.

91.     The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

92.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

93.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

94.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

95.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

96.     Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

97.     Plaintiff claims Defendant discriminated against her by not accommodating her disability.

98.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

99.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

100.    Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

101.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

102.    At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

103.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job.

104.    Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that she had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

105.    Plaintiff's disability was health complications due to being pregnant.

106.    Plaintiff requested to work move departments to lower stress levels and to work from home to lower stress and exposure to COVID-19.

107.    At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to switch departments and work from home.

108.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

109.    Defendant was aware of Plaintiff's disability at the time of her request.

110.    At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

111.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to her requesting an accommodation.

112.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

113.    Defendant failed to provide Plaintiff with a reasonable accommodation.

114.    Defendant refused to allow Plaintiff to work from home due to her disability.

115.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

116.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

117.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including

but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

### COUNT VI
### VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

118.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

119.   Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA "), MCL § 37.1201, et seq.

120.   Plaintiff claims Defendant discriminated against her by not accommodating her disability.

121.   At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

122.   At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

123.   At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job.

124.   Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that she had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

125.   Plaintiff 's disability was complications related to pregnancy.

126.   Plaintiff requested to work from home to lower stress levels for the safety of her unborn child.

14

127. At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

128. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

129. Defendant was aware of Plaintiff 's disability at the time of Plaintiff's request.

130. At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

131. At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to her requesting an accommodation.

132. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

133. Defendant failed to provide Plaintiff with a reasonable accommodation.

134. Defendant refused to allow Plaintiff to work from home due to her disability.

135. Defendant sent Plaintiff home instead of accommodating her.

136.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

137.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

138.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

<u>**COUNT VII**</u>
<u>**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – RETALIATION**</u>

139.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

140.    Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

141.    Plaintiff claims Defendant discriminated against her by not accommodating her disability.

142.    Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

143.    A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

144.    Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable

accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

145. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

146. At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

147. At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job.

148. Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that she had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

149. Plaintiff's disability was complications related to pregnancy.

150. Plaintiff requested to work from home to lower stress levels for the safety of her unborn child.

151. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

152. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

153. Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

154.    At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

155.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for her requesting an accommodation.

156.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

157.    Defendant failed to provide Plaintiff with a reasonable accommodation.

158.    Defendant refused to allow Plaintiff to work from home due to her disability.

159.    Defendant sent Plaintiff home  instead of accommodating her.

160.    As a direct and proximate result of Defendant's discrimination and retaliation, up through and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

**COUNT VIII**
**VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT –**
**RETALIATION**

161.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

162.    Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

163.    Plaintiff claims Defendant discriminated against her by not accommodating her disability.

164.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

165.    At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

166.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job.

167.    Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

168.    Plaintiff's disability was complications related to pregnancy.

169.    Plaintiff requested to work from home to lower stress levels for the safety of her unborn child.

170.    At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

171.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

172.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

173.    At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

174.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to her requesting an accommodation.

175.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

176.    Defendant failed to provide Plaintiff with a reasonable accommodation.

177.    Defendant refused to allow Plaintiff to work from home due to her disability.

178.    Defendant sent Plaintiff home  instead of accommodating her.

179.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

**COUNT IX**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION**

180.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

181.    Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

182.   Plaintiff claims Defendant discriminated against her by not accommodating her disability.

183.   Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

184.   A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

185.   Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

186.   At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

187.   At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

188.   At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions her job.

189.   Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

190.   Plaintiff's disability was complications related to pregnancy.

191.    Plaintiff requested to work from home to lower stress levels for the safety of her unborn child.

192.    At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

193.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

194.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

195.    At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

196.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for her requesting an accommodation.

197.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

198.    Defendant failed to provide Plaintiff with a reasonable accommodation.

199.    Defendant refused to allow Plaintiff to work from home.

200.  As a direct and proximate result of Defendant's discrimination and retaliation, up to and through her termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

201.  As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

202.  As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

**COUNT X**
**VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT –**
**DISABILITY DISCRIMINATION**

203.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

204.  Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

205.  Plaintiff claims Defendant discriminated against her by not accommodating her disability.

206.  At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

207.  At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

208.  At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job.

23

209.  Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that she had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

210.  Plaintiff's disability was complications related to pregnancy.

211.  Plaintiff requested to work from home to lower stress levels for the safety of her unborn child.

212.  At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

213.  At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

214.  Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

215.  At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

216.  At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to her requesting an accommodation.

217. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

218. Defendant failed to provide Plaintiff with a reasonable accommodation.

219. Defendant refused to allow Plaintiff to work from home due to her disability.

220. As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

221. As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

222. As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## **COUNT XI**

## **GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF TITLE VII**

223. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

224. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

225. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to sexually harass an employee or discriminate against said employee on the basis of gender.

226.   A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

227.   Plaintiff is a woman and a member of a protected class.

228.   Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

229.   A male broker who worked for Defendant sexually harassed Plaintiff.

230.    The communication and conduct from the broker was unwelcomed.

231.   The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

232.   Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

233.   Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to her.

234.   As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

235.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XII

## GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

236.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

237.    At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

238.    Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to sexually harass or discriminate against an employee.

239.    A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

240.    Plaintiff is a woman and a member of a protected class.

241.    Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

242.    A male broker who worked for Defendant sexually harassed Plaintiff.

243.    The communication and conduct from the broker was unwelcomed.

244.    The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

245.    Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

246.   Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to him.

247.   As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

## COUNT XIII
## FAILURE TO  PAY MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 201, et seq. ("FLSA")

248.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

249.   At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

250.   Section 206 of the FLSA, 29 U.S.C. § 206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. Section 218 of the FLSA, 29 U.S.C. §218(a), provides that employers pay such minimum wages as established by state law, should it be higher than the federal minimum.

251.   As stated above, Plaintiff was forced to work time for which she was not compensated at all.

252.   Because of Defendants' unlawful failure and refusal to pay Plaintiff minimum wages, Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b), to recover her unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

253. Defendants willfully, intentionally, and with reckless disregard failed to pay Plaintiff the minimum wage for all her hours worked in violation of the FLSA.

254. Defendant would not, and did not, compensate Plaintiff with her wages earned for those hours she was forced to work in violation of the FLSA.

255. Defendant, by and through its agents, had actual knowledge, and in fact directed and mandated that Plaintiff work during time that was uncompensated by Defendant.

256. Plaintiff requests relief as described in the Prayer for Relief below

## COUNT II
## VIOLATION OF FLSA OVERTIME LAW

257. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

258. At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

259. 29 U.S.C. 207(a)(1) states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

260. As noted above, Plaintiff routinely was forced to work without compensation for the additional time beyond her given 40 hour per week work schedule.

261. Accordingly, for the violations of Defendant that existed after 40 hours, Defendant also violated the FLSA overtime laws.

262.    Because of Defendant's unlawful failure and refusal to pay Plaintiff her overtime wages, Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C., to recover her unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

263.    Defendants willfully, intentionally, and with reckless disregard failed to pay Plaintiff the overtime wage for all her hours worked that were not compensated and worked in excess of 40 hours.

264.    Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, KASSANDRA MEMMER, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  April 19, 2023                    Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
Tasha Brownlee (P84359)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
tasha@aikenslawfirm.com
*Attorneys for Plaintiff*