UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA MEMMER,

    Plaintiff,

v.

UNITED WHOLESALE MORTGAGE,

    Defendant.
_____/

Case No. 23-cv-10921
Honorable Linda V. Parker

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

On April 19, 2023, Plaintiff Kassandra Memmer ("Memmer") initiated this lawsuit against Defendant United Wholesale Mortgage ("UWM"), asserting violations of federal and state law arising from her previous employment with UWM. Maintaining that Memmer's claims are subject to an arbitration clause in her employment contract, UWM moves to compel arbitration and dismiss her Complaint. (ECF No. 7.) The motion has been fully briefed. (ECF Nos. 9, 10.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). Because the Court concludes that there is a valid agreement requiring the parties to arbitrate the claims in Memmer's Complaint, it is granting Defendant's motion.

**Factual and Procedural Background**

Memmer began working for UWM on September 30, 2019.  (ECF No. 1 at PageID 2, ¶ 6.)  More than a week earlier, on September 19, Memmer electronically signed an Employment Agreement using UWM's iCIMS system. (*See* ECF No. 7-1 at PageID 67, ¶ 3; *id.* at PageID 84.)  This is the system UWM uses in its hiring and onboarding process.  (*Id.* at PageID 67, ¶ 3.)  Candidates create their own profile, including a unique log-in and password.  (*Id.*)

The Employment Agreement provides that it is governed by Michigan law. (*Id.* at PageID 81, ¶ 30.)  It also contains a paragraph captioned: "**Arbitration**". (*Id.* at PageID 82, ¶ 32 (emphasis in original).)  The paragraph reads, in relevant part:

> If a material dispute arises under this Agreement . . . the parties shall submit such dispute to binding arbitration and such arbitration shall otherwise comply with and be governed by the provisions of the expedited employment arbitration rules of the American Arbitration Association . . . BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION.

(*Id*. (capitalization in original).)

Memmer eventually quit her employment on July 9, 2021, after UWM refused to allow her to work from home during her pregnancy.  (ECF No. 1 at

PageID 5-6, ¶¶ 38, 45.)  In her Complaint in this action, filed April 19, 2023, Memmer alleges that she was subjected to retaliation, discrimination, and a hostile work environment during her employment.  (*See generally id.*)  In that regard, she asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII) and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").  Memmer also alleges that UWM failed to accommodate her pregnancy (i.e., her disability) and retaliated against her for seeking accommodations for her pregnancy, in violation of the Americans with Disabilities Act ("ADA") and Michigan Persons with Disabilities Civil Rights Act ("MPWDCRA").  (*See id.*)  She further alleges that UWM failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA").

## Standard of Review

UWM expresses uncertainty as to whether its motion should be reviewed under Federal Rules of Civil Procedure 12(b)(1) or (6), and notes that there is case law also suggesting that a motion to dismiss and compel arbitration should be pursued under Rule 12(b)(3).  (*See* ECF No. 7 at PageID 53-55 & n 2.)

The Sixth Circuit has advised that Rule 12(b)(6) does not guide a court's analysis of a motion to compel arbitration when the court is asked or considers matters outside the plaintiff's pleading.  *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (2021) (concluding that "the district court should not have used Rule 12(b)(6) [when deciding the defendant's motion to dismiss and to

3

compel arbitration]. That rule requires courts to stick to the complaint's allegations"). The *Boykin* court also advised that Rule 12(b)(3) should not be used to raise an arbitration agreement. *See id.* (reading *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 55-57 (2013), as showing that a challenge to "venue" under Rule 12(b)(3) looks at whether or not "the venue *laws* permit the plaintiff to sue in the chosen court" rather than whether "that choice comports with the parties' *contractual* forum"). The *Boykin* court's failure to even mention Rule 12(b)(1) suggests that it does not guide the analysis, either.

Instead, in *Boykin*, the court concluded that when matters outside the pleading are considered, Federal Rule of Civil Procedure 56(c) "provides the right way to assess a motion to compel arbitration[,]" and the court should decide "whether the party opposing arbitration has put the making of the arbitration contract 'in issue[.]'" *Id.* That is the standard the Court is applying here.

## Applicable Law

The Federal Arbitration Act ("FAA") "applies to 'a written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction.'" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (ellipses removed) (quoting 9 U.S.C. § 2). Section 2 of the FAA provides that written arbitration agreements

4

involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

A court must make three threshold determinations to find a dispute between parties arbitrable: (1) "the parties agreed to arbitrate"; (2) "the scope of that agreement" encompasses the dispute; and (3) "if federal statutory claims are asserted" that Congress has not evidenced its intent for "those claims to be nonarbitrable[.]" *Id*. (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). If "some, but not all, of the claims in the action are subject to arbitration," the court then must decide "whether to stay the remainder of the proceedings pending arbitration." *Id*. (quoting *Stout*, 228 F.3d at 714).

Courts look to general principles of state contract law to determine whether a valid arbitration agreement exists. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Here, as indicated, the Employment Agreement indicates that Michigan law controls and the parties each cite Michigan law in their briefs.

5

Michigan law requires an offer and acceptance to form a contract. *Hegenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Pakideh v. Franklin Com. Mortg. Grp., Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)); *see also Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) ("A contract is made when both parties have executed or accepted it, and not before."). What constitutes an offer or acceptance under Michigan law was summarized by the Sixth Circuit in *Hegenreder*:

> "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 733 N.W.2d 766, 770 (2006) (internal quotations marks omitted). Similarly, "an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id*. at 771 (quotation marks omitted; alteration removed).

656 F.3d at 417. "Whether the parties have mutually agreed to be bound [by contract] 'is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Id*. (quoting *Kloian*, 733 N.W.2d at 771). "Michigan law permits an inference that an offeree accepted the terms of the agreement when she signaled her assent through conduct." *High*, 594 F. Supp. 2d at 798 (citing *Pakideh*, 540 N.W.2d at 780) ("If

6

an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct."); *see also Sanchez v. Eagle Alloy Inc.*, 658 N.W.2d 510, 517 (Mich. Ct. App. 2003) ("A meeting of the minds can be found from performance and acquiescence in that performance.").

The party seeking to enforce an arbitration agreement has the burden to show the agreement's existence. *Ford v. Midland Funding LLC*, 264 F. Supp. 3d 849, 855 (E.D. Mich. 2017) (citing *Bank of Am., N.A. v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016)); *see also AFT Mich. v. State of Mich.*, 866 N.W.2d 782, 804 (Mich. 2015). On the other hand, the party opposing arbitration has the burden to show that the agreement is not enforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000). In the Sixth Circuit, if a district court concludes that the plaintiff's claims are subject to arbitration, it may dismiss the action or, if requested by a party, stay the action.[1] *See Hilton v.*

---

[1] In some Circuits, courts are required to stay a case pending arbitration if any side requests that remedy. *See Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 479-80 (6th Cir. 2021) (citing cases). Other Circuits allow courts to dismiss actions rather than issue stays, even when requested, "where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 380 (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) and citing additional cases). In *Anderson*, the Sixth Circuit acknowledged that it has "followed the latter approach in unpublished decisions[,]" *id.* (citations omitted), and declined to answer whether it still considered that approach best because a stay was the only appropriate remedy in the matter before it, *id.* Here,

*Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1275 (6th Cir. 1990)).

## Analysis

In the present matter, UWM satisfies its burden to present evidence from which the trier of fact could find an agreement between it and Memmer to arbitrate Memmer's present claims arising from her employment.  UWM provides an Employment Agreement, electronically signed by Memmer, which includes an arbitration clause.  *See Boykin*, 3 F.4th at 839 (concluding that the employer satisfied its burden of demonstrating a contract to arbitrate between itself and the plaintiff where the plaintiff, as discussed by the district court, reviewed an electronic copy of the arbitration agreement and acknowledged that he read and accepted the terms by electronically signing it); *Martyn v. J.W. Korth & Co.*, No. 1:11-cv-407, 2011 WL 2144618, at *2 (W.D. Mich. June 1, 2011) (citing federal and Michigan law providing that a contract may not be denied or its legal effect challenged based on an electronic signature).  UWM further provides the declaration of the person in charge of supervising its hiring and onboarding process

---

neither party requests a stay.  Therefore, a stay would not be mandatory regardless of which approach the Sixth Circuit ultimately concludes should be followed.

for new employees, who indicates that Memmer signed the agreement and explains how she would have done so.

Memmer's main argument in response to UWM's evidence and motion is that she never agreed to arbitrate.[2] She asserts in a declaration that she "do[es] not recall signing an arbitration agreement and ha[s] no idea what it means nor of its significance." (ECF No. 9-2 at PageID 114, ¶ 42.) She claims that she "was never told what [she] was signing nor did [she] understand the document or its implications." (*Id.* ¶ 43.) According to Memmer, she "would not have signed an arbitration agreement without further explanation of what arbitration is, how it

---

[2] The Sixth Circuit has identified several factors to consider when deciding whether a plaintiff knowingly and voluntarily agreed to arbitrate his or her employment claims. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (2005) (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003)). The record here, however, is devoid of sufficient information to evaluate some of these factors, such as Memmer's "experience, background, and education" or "the amount of time [she] had to consider whether to sign the [Employment Agreement.]" *See id*. Yet, the burden falls on Memmer to show that she did not knowingly and voluntarily agree to arbitrate her employment claims. *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91-92; *see also J.P. Morgan Chase Bank, N.A. v. Winget*, 639 F. Supp. 2d 830, 834 (E.D. Mich. 2009) (quoting *K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 756 (6th Cir. 1985)) (explaining that the party objecting to a contractual provision bears "the burden of demonstrating that its consent to the [provision] was not knowing and voluntary"). Thus, it was her responsibility to present any evidence with respect to those factors which would lead the Court to find she did not act knowingly and voluntarily.

works, and how it applies to the employment agreement for legal representation." (*Id.* ¶ 45.)

Memmer does not argue that, if the arbitration provision is enforceable, her claims fall outside its scope. Nor does she contend that, even if enforceable, Congress intended her statutory claims to be nonarbitrable. She does not ask the Court to stay this matter if any claims are subject to arbitration. Thus, the outcome of UWM's motion turns on whether Memmer has "establish[ed] a 'genuine' dispute over whether [s]he accepted the [Employment Agreement containing the arbitration clause]." *Boykin*, 3 F.4th at 839. As *Boykin* indicates, she must "present 'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find that [s]he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Id*. (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)).

Memmer does not deny signing the Employment Agreement which UWM offers with her electronic signature. She merely contends that she does not "recall" signing "an arbitration agreement[.]" Finding a similar denial insufficient to create a genuine fact issue in *Boykin*, the Sixth Circuit relied on caselaw holding that "convenient memory lapses do not create factual disputes that are genuine." *Id*. at 836, 839 (collecting decisions). It is insufficient, the court concluded, for the party

10

opposing arbitration to "simply . . . testify[] that the party does not 'remember' signing an arbitration contract or receiving information about arbitration." *Id*.

In *Brown v. Heartland Employment Services, LLC*, No. 19-cv-11603, 2020 WL 2542009 (E.D. Mich. May 19, 2020), assertions similar to those made by Memmer were made by the plaintiff in response to the employer's motion to compel arbitration. *Id.* at *4 (indicating that the plaintiff swore in a declaration "that she knows she did not see the [arbitration agreement]," and "that she does not remember seeing the [presentation regarding the agreement] or clicking "Acknowledge"). There, the court concluded that the assertions "fail[ed] to place the validity of the contract at issue under Sixth Circuit law" and "fail[ed] to create a fact issue as to whether a 'meeting of the minds' occurred." *Id.*; *see also Brody v. CultureSource*, No. 20-cv-11663, 2020 WL 6562089, at *2 (E.D. Mich. Nov. 9, 2020) (holding that the plaintiff's "blanket denial" that she never saw the terms and conditions containing the arbitration clause when she filled out her employment application "is insufficient to show that she did not assent").

A genuine factual dispute also is not created by Memmer's professed lack of understanding regarding the significance of the arbitration provision or her current assertion that she would not have signed an arbitration agreement without further explanation and seemingly, based upon her Declaration, without counsel. *See Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1002 (6th Cir. 2009). In

11

*Mazera*, the Sixth Circuit concluded that the plaintiff's assertions that he lacked bargaining power, did not have an attorney, did not understand the contract, and did not understand English were not "material with respect to the validity of the arbitration agreement."

Notably, the arbitration provision in Memmer's Employment Agreement contains plain terms which someone untrained in the law would understand. It states in capitalized letters: "BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW" and "IS AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION." (ECF No. 7-1 at PageID 82, ¶ 32.) Moreover, immediately before requesting the employee's signature, the Employment Agreement warns:

> **READ THIS AGREEMENT BEFORE SIGNING**
>
> **As evidenced by Employee's signature below, Employee hereby acknowledges that he or she has read and understood all of the terms and conditions of this Agreement, that Employee agrees to the terms and conditions of this Agreement, and that this Agreement is binding upon Employee in accordance with its terms.**

(*Id*. at PageID 84 (emphasis in original).) This is consistent with Michigan law, providing that a party who signs a contract is deemed to have read and understood it. *See Watts v. Polaczyk*, 619 N.W.2d 714, 717 (Mich. Ct. App. 2000) (citing *McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 405 N.W.2d 88, 96

(Mich. 1987) ("Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents")).

For these reasons, the Court concludes that the parties agreed to arbitrate disputes arising from Memmer's employment. Although not disputed, the Court further concludes that Memmer's claims in this lawsuit fall within the scope of the arbitration agreement. Finally, those statutory claims are arbitrable. *See, e.g., Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991) (concluding that Title VII claims are arbitrable); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376-77 (6th Cir. 2005) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-35 (1991); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000)) ("[S]tatutory claims may be the subject of an arbitration agreement, including employment discrimination and claims under the FLSA"); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 487 n. 1 (6th Cir. 2008) (indicating that the plaintiff "[w]isely . . . does not dispute that [his] employment discrimination claims [under Title VII, ADA, MPWDCRA, and ELCRA] may be subject to mandatory arbitration").

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and to Dismiss the Complaint (ECF No. 7) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 16, 2024