UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA MEMMER,

        Plaintiff,                Case No.: 2:23-cv-10921-LVP-APP
                                        Hon. Linda V. Parker

v.

UNITED WHOLESALE MORTGAGE,

        Defendant.

---

| | |
|---|---|
| Carla D. Aikens (P69530) | James W. Rose (P66473) |
| Carla D. Aikens, PLC | Yohana Iyob (P86924) |
| 615 Griswold St., Ste. 709 | Taft Stettinius & Hollister LLP |
| Detroit, MI 48226 | 27777 Franklin Road, Suite 2500 |
| 844.835.2993 | Southfield, MI 48034 |
| carla@aikenslawfirm.com | (248) 351-3000 |
| | jrose@taftlaw.com |
| *Attorneys for Plaintiff* | yiyob@taftlaw.com |
| | |
| | *Attorneys for Defendant* |

---

**DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS
AND COMPEL ARBITRATION**

---

Defendant United Wholesale Mortgage ("UWM") hereby moves the Court to dismiss the Plaintiff's complaint and compel arbitration, pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

173596263v2

The parties and the Court discussed this filing in a Status Conference on June 5, 2025. To the extent Local Rule 7.1(a) is implicated, counsel for Plaintiff indicated at that time that concurrence in the relief sought would not be provided.

WHEREFORE, based on the authorities set forth in the accompanying Brief in Support, UWM respectfully asks the Court to grant this Supplemental Motion to Dismiss and Compel Arbitration.

Respectfully Submitted,
**TAFT STETTINIUS & HOLLISTER LLP**

*/s/   James W. Rose*
James W. Rose (P66473)
Yohana Iyob (P86924)
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
jrose@taftlaw.com
Date: June 26, 2025          yiyob@taftlaw.com

173596263v2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA MEMMER,

      Plaintiff,                        Case No.: 2:23-cv-10921-LVP-APP
                                       Hon. Linda V. Parker

v.

UNITED WHOLESALE MORTGAGE,

      Defendant.

---

| | |
|---|---|
| Carla D. Aikens (P69530) | James W. Rose (P66473) |
| Carla D. Aikens, PLC | Yohana Iyob (P86924) |
| 615 Griswold St., Ste. 709 | Taft Stettinius & Hollister LLP |
| Detroit, MI 48226 | 27777 Franklin Road, Suite 2500 |
| 844.835.2993 | Southfield, MI 48034 |
| carla@aikenslawfirm.com | (248) 351-3000 |
| | jrose@taftlaw.com |
| *Attorneys for Plaintiff* | yiyob@taftlaw.com |
| | |
| | *Attorneys for Defendant* |

---

**BRIEF IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION TO
DISMISS AND COMPEL ARBITRATION**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

ISSUE PRESENTED .......................................................................... iv

MOST CONTROLLING AUTHORITY ................................................... v

INTRODUCTION ............................................................................... 1

RELEVANT PROCEDURAL HISTORY AND STATUS ON REMAND ............. 1

LAW OF THE CASE ISSUES ............................................................... 4

RELEVANT FACTUAL BACKGROUND ................................................. 6

ARGUMENT ..................................................................................... 8

    I.    STANDARD OF REVIEW .................................................. 8

    II.    THE SIXTH CIRCUIT'S NEW MEMMER TEST ..................... 10

    III.    OTHER COURTS HAVE REACHED SIMILAR CONCLUSIONS ............................................................. 15

CONCLUSION ................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) .................................................................9

*Andrews v. TD Ameritrade, Inc.*,
  596 F. App'x 366 (6th Cir. 2014) .........................................................8

*Arizona v. California*,
  460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)........................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................8, 9

*Cornelius v. CVS Pharmacy Inc.*,
  133 F.4th 240 (3d Cir. 2025) .........................................12, 16, 17, 18

*Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*,
  603 U.S. 799, 144 S.Ct. 2440, 219 L.Ed.2d 1139 (2024) .................11

*Famuyide v. Chipotle Mexican Grill, Inc.*,
  111 F.4th 895 (8th Cir. 2024) ...............................................12, 15, 16

*GMAC Mortg., LLC v. McKeever*,
  651 F. App'x 332 (6th Cir. 2016) .........................................................4

*Green v. Ameritech Corp.*,
  200 F.3d 967 (6th Cir. 2000) ................................................................9

*Green v. Brennan*,
  578 U.S. 547, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016)......................11

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) ............................................................4, 5

ii

*Memmer v. United Wholesale Mortg., LLC*,
135 F.4th 398 (6th Cir. 2025) ......................................................*passim*

*Olivieri v. Stifel, Nicolaus & Co.*,
112 F.4th 74 (2d Cir. 2024) .................................................................12

**Rules**

Fed. R. Civ. P. 12 .............................................................................10

Fed. R. Civ. P. 12(b)(1) ......................................................................8

Fed. R. Civ. P. 12(b)(6) ......................................................................8

Fed. R. Civ. P. 56 ..........................................................................9, 10

**Statutes**

9 U.S.C. § 1 .......................................................................................9

9 U.S.C. § 2 .......................................................................................9

9 U.S.C. § 401 ..................................................................................10

**Other Authorities**

18B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters*
§ 4478 (4th ed. 2015) .........................................................................5

*Dispute*, Ballentine's Law Dictionary (3d ed. 2010)...............................11

*Dispute*, Black's Law Dictionary (11th ed. 2019).....................................11

iii

## ISSUE PRESENTED

The U.S. Sixth Circuit Court of Appeals remanded this case for a determination of when the parties' dispute arose.

Should the case be dismissed, and the Plaintiff compelled to arbitrate her claims, because the parties' dispute arose prior to the enactment of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021?

Plaintiff would say no.

Defendant says yes.

**MOST CONTROLLING AUTHORITY**

*Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 403 (6th Cir. 2025)

## INTRODUCTION

The bulk of this Court's January 16, 2024 Opinion and Order (R. 13), which granted summary judgment, compelled arbitration, and dismissed the complaint, was affirmed on appeal by the Sixth Circuit. The case was remanded for determination of the following limited issue:

> When did the dispute—that is, the controversy between the parties—arise?

(CA6 Opinion p. 15, attached at Exhibit A.)

That question is answered by the allegations in Plaintiff Kassandra Memmer's complaint. It alleges that the parties' dispute arose while Memmer was still employed by Defendant United Wholesale Mortgage ("UWM"), prior to the March 3, 2022 enactment of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"). As a matter of law, then, the EFAA does not apply to Memmer's claims. This Court should once again dismiss this case and compel the parties into arbitration.

## RELEVANT PROCEDURAL HISTORY
## AND STATUS ON REMAND

Memmer's 264-paragraph complaint alleges fourteen claims against UWM. Counts XI and XII include allegations of sexual harassment. UWM moved to dismiss the complaint and compel arbitration, based on the arbitration provision

contained in Memmer's employment agreement. (R. 7.) This Court granted the motion. (R. 13.)

On appeal, Memmer challenged the enforceability of the arbitration agreement, argued that her claims were not within the agreement's scope, and argued that the EFAA precluded arbitration. Memmer's EFAA argument focused on the date her complaint was filed; specifically, she argued that because the complaint was filed after enactment, the EFAA applied and barred arbitration. (Ex. A, CA6 Opin. at p. 11.)

The Sixth Circuit rejected all of these arguments. It ruled that the parties agreed to arbitrate and that their specific arbitration agreement is valid and enforceable. (*Id.* p. 5.) It ruled that all of Memmer's claims fall within the scope of that arbitration agreement. (*Id.*) And it expressly rejected Memmer's argument that the EFAA's applicability is dependent upon when the complaint was filed. (*Id.* p. 11; "a dispute may arise on the date that a lawsuit was filed, but it may arise earlier, too.")

Recognizing that this is an issue of first impression in this Circuit, the Sixth Circuit summarized:

> At this step, we would historically have concluded that Memmer's claims were arbitrable. … But Congress recently enacted a new law that affects our analysis. This law, EFAA, allows an individual claiming sexual harassment or assault to elect judicial resolution, rather than arbitral resolution of their claims, even if the individual previously agreed to arbitrate such claims …

2

> … The sole issue before us is whether the events occurred at the
> right time. Memmer quit UWM before EFAA was enacted and all
> alleged sexual harassment occurred before that date. But she filed
> her administrative claim with the EEOC, as well as this lawsuit,
> after EFAA became law. We must decide whether EFAA applies
> here.
>
> …
>
> When the dispute—the controversy between the parties—arose
> under the facts of this case is a question best answered in the first
> instance by the district court. Accordingly, we will remand for the
> district court to decide and, if needed, obtain a factual record on
> which to do so.

(*Id*. pp. 5-6, 15.)

As explained next, no factual record is needed. Although the parties did not originally brief this issue, it is settled by the allegations of Memmer's complaint.

Accordingly, this motion is limited to the sole issue of whether this Court can determine from the existing record whether the parties' dispute arose prior to enactment of the EFAA. If this Court agrees with UWM and concludes that the complaint answers this question, UWM's motion should be granted and the parties should once again be compelled to arbitration. If this Court disagrees, and concludes that the complaint alone does not answer the question, the following should occur:

1. The Court should determine whether discovery and, if necessary, an evidentiary hearing, should be conducted on this limited issue; and

2. The Court should also entertain additional briefing regarding related but unresolved issues identified by the Sixth Circuit, such as (a) whether Memmer's sexual harassment claim is sufficiently "plausible" to remain in court (Ex. A, CA6 Opin. p. 15); and (b) whether all of Memmer's claims can remain in court, or the matter should bifurcated, with her remaining twelve claims sent to arbitration (*id*.).

UWM notes and preserves these issues here to ensure they are not waived. But as noted above, there will be no need to address these ancillary issues if the Court determines, as a threshold matter, that the EFAA does not apply.

## LAW OF THE CASE ISSUES

As noted, the Sixth Circuit affirmed a number of the District Court's rulings, and its Opinion limits the issues that may be addressed on remand. Under the law-of-the-case doctrine, "the courts should not reconsider a matter once resolved in a continuing proceeding." *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338 (6th Cir. 2016), quoting *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (internal quotation marks omitted). The following issues were decided by this Court and affirmed on appeal, so they are the law of this case:

1. The parties' arbitration agreement is valid and enforceable. (Ex. A, CA6 Opin. p. 5.)

2. All of Memmer's claims fall within the scope of the arbitration agreement, and all are arbitrable. (*Id*. pp. 5-6.) Therefore, if the

4

EFAA does not apply (and does not bar arbitration), the entire case should once again be compelled into arbitration.

3. Memmer's claims accrued prior to the enactment of the EFAA. (*Id*. p. 15.)

These rulings are the law of the case. "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe*, 801 F.3d at 739 (emphases in original) (internal quotation marks omitted); *see also Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("the [law-of-the-case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); 18B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4478 (4th ed. 2015).

The only issue presently before the Court is when the parties' dispute arose. (Ex. A, CA6 Opin. p. 15.) Furthermore, the Sixth Circuit majority noted that the EFAA applies only to "a dispute relating to conduct that is alleged to constitute sexual harassment." (*Id*. p. 9.) As a result, this motion examines which allegations in Memmer's complaint address "conduct that is alleged to constitute sexual harassment." (*Id*.)

5

## RELEVANT FACTUAL BACKGROUND

The complaint's general factual allegations have been thoroughly examined, both by this Court (R. 13, Opin. and Order at PageID.165-166) and the Sixth Circuit (Ex. A at p. 2). Because those facts are not in dispute (for purposes of this motion), they are reincorporated here and need not be repeated in detail. Memmer's allegations of so-called sexual harassment, however, have never been examined. Because they are the focus of this motion, they are detailed here.

In broad summary, this case is an employment dispute between Memmer and her former employer, UWM. UWM employed Memmer as an underwriter from September 30, 2019, to July 9, 2021, when she quit. (R. 1, PageID.2, 6.) Memmer signed an Employment Agreement, which contains the aforementioned mandatory arbitration provision. (R. 7-1, PageID.81.)

Memmer's allegations of sexual harassment relate exclusively to one incident. She alleges that "a male broker who worked for Defendant sexually harassed Plaintiff" by stating that she was "too pretty to be an underwriter." These allegations appear in three different sections of the complaint: in the Statement of Facts (R. 1 at ¶¶ 35-36); in Count XI, for "Gender/Sexual Harassment/Discrimination in Violation of Title VII" (*id*. at ¶¶ 229-234); and in Count XII, for "Gender/Sexual Harassment/Discrimination in Violation of the Michigan Elliott-Larsen Civil Rights Act" (*id*. at ¶¶ 242-247). All of these allegations identify conduct and a resulting

6

disagreement between the parties that arose while Memmer was employed—

meaning, they occurred before she quit in July 2021. (*Id.* at ¶ 45; *see also* Ex. A,

CA6 Opin. at p. 15.)

Specifically, these are the allegations in question:

> 35. … The broker started contacting [Memmer] via e-mail and hitting on her, stating that she was too pretty to be an underwriter and that he was going to tell her CEO Matt Ishbia to make her a model for the company.
>
> 36. Plaintiff informed Tyler Creager, leader filling in for her leader for the day, about e-mail that she received from broker and he stated that it's just best that she just laugh about it and forget about it. This incident was never reported, although it should have been.
>
> …
>
> 229.　　A male broker who worked for Defendant sexually harassed Plaintiff.
>
> 230.　　The communication and conduct from the broker was unwelcomed.
>
> 231.　　The unwelcomed conduct or communication was intended to or did in fact substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.
>
> 232.　　Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.
>
> 233.　　Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to her.

173596263v2

234.     As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

(R. 1, Compl. at PageID.5, 26.)[1]

There are no other allegations in the complaint that mention or reference sexual harassment or assault.[2]

## ARGUMENT

### I.   Standard of Review

As it did originally, UWM seeks dismissal under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). The Sixth Circuit has previously affirmed dismissal due to mandatory arbitration under Rule 12(b)(1). *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014). And under Rule 12(b)(6), a complaint cannot survive a motion to dismiss unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

---

[1] The allegations in paragraphs 229-234 (Count XI) are repeated verbatim in paragraphs 242-247 (Count XII). *See id.* at PageID.27-28.

[2] There are numerous reasons why these allegations do not state a plausible sexual harassment claim—including, *inter alia*, the factual nature of the allegations, as well as the fact that they implicate a third party, not UWM—but that issue is reserved and is not briefed here.

8

(internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). Rather, it "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567).

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1, *et seq*, dismissal is appropriate when the parties have entered into a valid arbitration agreement that covers the claims in question. *Green v. Ameritech Corp*., 200 F.3d 967, 973 (6th Cir. 2000); *see also* 9 U.S.C. § 2. As noted above, these issues have already been decided and are the law of this case—unless the EFAA applies and precludes arbitration.

In initially assessing the threshold question of whether the parties agreed to arbitrate, this Court and the Sixth Circuit both applied the framework of Fed. R. Civ. P. 56. Under that rule, both Courts held there was no genuine issue of material fact as to whether the parties agreed to arbitrate Memmer's disputes. But because that threshold issue was settled on appeal, there is no need to proceed under Rule 56 on remand. Instead, on remand, the only question is when the parties' dispute arose.

UWM's position is that this issue can and should be decided under Rule 12, rather than Rule 56, because the complaint's allegations settle the issue as a matter of law. But the result is the same under either rule. Whether the issue is analyzed and decided under Rule 12 (because the timing of the parties' dispute is established conclusively by reference to the pleadings alone) or Rule 56 (because there is no genuine issue of material fact about the timing), the result is the same. The controversy between the parties indisputably arose while Memmer was employed, before the EFAA was enacted.

## II.   The Sixth Circuit's new *Memmer* test

On appeal, the Sixth Circuit wrestled with this provision of the EFAA, as well as a statutory note addressing its timing:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

The statute does not list a triggering date or state that it is intended to have retroactive effect. But an accompanying statutory note states that the EFAA "shall apply with respect to any **dispute or claim that arises or accrues on or after the date of enactment** of this Act." 9 U.S.C. § 401 note ("application note") (emphasis

10

added); *see also Memmer*, 135 F.4th at 407. The EFAA's date of enactment was March 3, 2022.

In remanding this case, the Sixth Circuit majority held that there is a legal distinction between when a claim accrues and when a dispute arises. This distinction determines whether the EFAA applies in this case.

Specifically, the Court said:

> … the EFAA applies to *claims that accrue* and *disputes that arise* on or after March 3, 2022. In our endeavor to give effect to each of these clauses, we ask whether each bears separate meaning. We conclude that they do.
>
> The word "claim" carries multiple related meanings in the law—but only one in the context of the application note. … In the context of accrual, "claim" bears only the last meaning: cause of action. *Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*, 603 U.S. 799, 810, 144 S.Ct. 2440, 219 L.Ed.2d 1139 (2024). A claim accrues "when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'" *Id.* at 809, 144 S.Ct. 2440 (quoting *Green v. Brennan*, 578 U.S. 547, 554, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016)).
>
> …
>
> The word "dispute," on the other hand, usually denotes a controversy between parties. A dispute is a "conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit." *Dispute*, Black's Law Dictionary (11th ed. 2019); *Dispute*, Ballentine's Law Dictionary (3d ed. 2010) ("controversy. An allegation of fact by one person denied by another, each acting with some show of reason."). This is how the statute uses the term "dispute."

*Memmer*, 135 F.4th 398, 407–08.

The Court then noted that the task of determining when a claim accrues is a common undertaking—but there is no similarly established framework for determining "when a dispute arises." *Id*. 409.[3] The Court identified these guidelines:

> Depending on the facts, a dispute could arise when an injured party sends the defendant a demand letter, files an administrative charge, requests arbitration, commences a lawsuit, or some other event occurs. *See Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 897–98 (8th Cir. 2024). **The relevant question is when the parties became adverse to one another**. *Id.*; *see Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, ——, 2025 WL *5 (3d Cir. 2025). In many cases, the dispute will arise after the claim accrues. For example, a sexual-harassment claim may accrue when one employee makes an inappropriate remark to another, but **the dispute may not arise until the employer resists the employee's complaints**. But the converse could also be true. A dispute may arise between the parties about the harassment, but if the harassment continues, a continuing violation, such as a hostile work environment claim, might subsequently accrue due to the later events. *See Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 85–87 (2d Cir. 2024). Ultimately, when a dispute arises is a fact-dependent inquiry that can be determined in the context of each case.

*Memmer*, 135 F.4th at 409 (emphasis added).

Thus, the Court established two means of ascertaining when a dispute arises: (1) when the parties became adverse to each other, and (2) when the employer resisted the employee's complaints. *Id*. These scenarios are distinguished from those

---

[3] The dissent argued that this is because, *inter alia*, there is no meaningful (or practically workable) distinction between the two concepts, and UWM agrees, but the majority rejected this position.

that focus exclusively on the timing of the injurious conduct without regard to the employer's response to that conduct.

Here, as noted above, the Sixth Circuit has already held that Memmer's claim accrued, and the alleged injurious conduct occurred, during her employment, no later than July 2021. But the complaint also alleges that the parties' dispute arose during this same period of time, while Memmer was still employed. That is, the parties became adverse to each other, and UWM resisted Memmer's complaints, while Memmer was still employed.[4]

Specifically, Memmer alleges in very clear terms that she informed UWM of the harassment, and, crucially, that ***UWM resisted her complaints*** and failed to act on them. First, Memmer alleges that she informed her supervisor of the harassment:

- "Plaintiff informed Tyler Creager, leader filling in for her leader for the day, about e-mail that she received from broker" (R.1 at ¶ 36);

- "Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication" (*id.* at ¶¶ 232; 245).

Next, Memmer alleges that UWM resisted her complaint and failed to act on it:

---

[4] This has always been evident from the pleadings, but the parties had no reason to address this issue previously; the distinction between *claim* and *dispute* was not recognized in the Sixth Circuit until the appeal of this case.

- Plaintiff's supervisor, Creager, "stated that it's just best that she just laugh about it and forget about it. This incident was never reported, although it should have been" (*id*. at ¶ 36);

- "Defendant failed to remedy the unwelcomed conduct or communication … Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to her" (*id*. at ¶¶ 232-233; 245-246).

These allegations make clear not only that a claim had accrued, but also that a dispute had arisen. Under *Memmer*, the dispute arises "when the parties became adverse to one another"—and, more specifically, at the time when "the employer resists the employee's complaints." *Memmer*, 135 F.4th at 409. When UWM (allegedly) rejected Memmer's complaints and failed to act on them, the controversy between the parties arose.

All of this occurred while Memmer was still employed by UWM, no later than July 2021. Because the EFAA was not enacted until March 2022, the dispute between these parties arose prior to enactment of the EFAA. As a result, the Act cannot and does not apply, and it does not preclude arbitration. UWM's motion should be granted, the case should be dismissed, and Memmer's claims may proceed, if at all, in arbitration.

14

### III.   Other courts have reached similar conclusions

As noted, the Sixth Circuit's analysis of the *claim vs. dispute* distinction is a matter of first impression in this Circuit. And there is some question as to whether other Circuits interpret EFAA applicability in the same manner. But amongst those courts that have analyzed the issue—and amongst those that gauge EFAA applicability the same way the majority did in this case—they would agree that Memmer's complaint alleges the dispute between these parties arose prior to EFAA enactment.

*Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895 (8th Cir. 2024), an Eighth Circuit case mentioned by the *Memmer* panel, addressed a case in which the relevant claims accrued before the EFAA's effective date. *See* 111 F.4th at 897. That court nonetheless concluded that the dispute arose later, after it was clear there was a controversy between the parties. *Id.* at 898. The court rejected defendant Chipotle's argument that the dispute arose at the same time as the harassing conduct, stating that, at that point, "Famuyide had not asserted any right, claim, or demand against Chipotle, and Chipotle had not registered disagreement with any position of Famuyide's." *Id.* The defendant could not demonstrate, in that case, that a controversy between the parties arose prior to enactment; it could not show that it "had registered disagreement with any position of Famuyide's" before the EFAA

15

was effective. As a result, the dispute between the parties did not arise until later, *after* the EFAA became effective—and arbitration was therefore precluded.

This case is different. If *Famuyide* were applied here, that court would recognize that regardless of when the harassing conduct occurred, the dispute between the parties arose once the employer, UWM, "registered disagreement with any position of" its employee. 111 F.4th at 897. Here, Memmer alleges that UWM registered disagreement with her position while she was still employed, when her supervisor told her to "laugh" off the allegedly harassing conduct, told her to "forget about it," and refused to make a formal report or otherwise act upon Memmer's complaint. (R.1 at ¶ 36.) Under the *Famuyide* test, the parties' dispute arose prior to enactment of the EFAA.

The Third Circuit recently followed a similar approach—and the *Memmer* panel made clear that it favored this approach. In *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 248 (3d Cir. 2025), the Court held that the "ordinary meanings of both 'dispute' and 'arise'" compelled the conclusion that the EFAA applies "when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, **and the employer expressly or constructively opposes that position**." *Id*. at 247 (emphasis added, quoting *Famuyide*, 111 F.4th at 898). The *Memmer* panel considered this analysis and stated simply, "We agree." *Memmer*, 135 F.4th at 409–10.

16

*Cornelius* is on all fours with the current case, right down to the procedural posture. Consider:

| *Cornelius* (3d Cir. 2025) | *Memmer* (6th Cir. 2025) |
| --- | --- |
| Internal complaints of harassment in 2019 and 2020. 133 F.4th at 243. | Internal complaints of harassment in 2021. Complaint ¶¶ 35-36, 229-234. |
| Plaintiff resigned in October 2021 and was fired in November 2021. *Id.* at 244. | Plaintiff quit on July 9, 2021. Complaint ¶ 45. |
| Plaintiff filed an EEOC charge in August 2022, and received a right to sue notice in 2023, after the EFAA effective date. *Id.* | Plaintiff filed an EEOC charge in April 2022, and received a right to sue notice in 2023, after the EFAA effective date. *Memmer* at 413. |
| **Result**: dispute arose prior to EFAA; arbitration compelled. | **Result**: ??? |

The *Cornelius* Court concluded that the employer's failure to investigate the employee's internal complaints (made in 2019-2020), and its implicit rejection of those complaints, made it clear that a dispute had arisen between the parties. *Cornelius*, 133 F.4th at 248. "This is enough to say that [her employer] disagreed with [her] position as to [her supervisor's] conduct. Accordingly, a 'dispute' 'arose' while [she] was employed" sometime between 2019 and 2021. *Id.* Because the

17

dispute arose prior to EFAA enactment, arbitration was not precluded in *Cornelius*; the Court granted the defendant's motion to compel arbitration. *Id.*

The same analysis applies here—and, considering the Sixth Circuit's favorable view of *Cornelius*, the same outcome is warranted: a ruling that, because the dispute arose "long before the EFAA's March 3, 2022 effective date," Plaintiff's "claims are not shielded from arbitration." *Id.*; *and see Memmer v. United Wholesale Mtge., LLC,* 135 F.4th 398, 409 (6th Cir. 2025) (with respect to the holding in *Cornelius*, stating simply "We agree.").

Here, Memmer registered her disagreement by complaining to her supervisor that a broker's comments were harassing in nature. According to Memmer's complaint, she notified UWM that the conduct was, and made her feel, "unwelcomed." (R.1 at ¶ 57.) But, according to Memmer, UWM never reported the incident or took any steps to alleviate her concerns. To the contrary, it told her to "forget about it" and "laugh" about it. (*Id.* at ¶ 36.) In other words, UWM "expressly or constructively oppose[d] that position." Thus, under the *Cornelius* test, the parties' dispute arose while Memmer was still employed, no later than July 2021.

In sum, the parties agreed to arbitrate, all of Memmer's claims are subject to the arbitration provision, and all of her claims are arbitrable. Accordingly, the Court should dismiss the complaint and compel arbitration.

18

## CONCLUSION

Memmer's own allegations make clear that the parties' dispute arose while she was still employed, no later than July 2021. That dispute predated the enactment of the EFAA. As a result, the Act does not apply, and it does not preclude arbitration.

UWM respectfully asks the Court to grant its motion, dismiss the complaint, and compel arbitration.

Respectfully Submitted,
**TAFT STETTINIUS & HOLLISTER LLP**

*/s/   James W. Rose*
James W. Rose (P66473)
Yohana Iyob (P86924)
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
jrose@taftlaw.com
Date: June 26, 2025          yiyob@taftlaw.com

19