# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KASSANDRA MEMMER, ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION NO. 2:23-cv-10921-LVP-APP |
| ) | |
| vs. ) | HON. Linda V. Parker |
| ) | |
| UNITED WHOLESALE ) | |
| MORTGAGE, ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

Carla D. Aikens (P69530)  
Connor B. Gallagher (P82104)  
CARLA D. AIKENS, P.L.C.  
615 Griswold St., Ste. 709  
Detroit, MI 48226  
Tel:   844.835.2993  
carla@aikenslawfirm.com  
connor@aikenslawfirm.com  
*Attorneys for Plaintiff*

James W. Rose (PP66473)  
Yohana Iyob (P86934)  
TAFT, STETTINIUS & HOLLISTER, L.L.P.  
27777 Franklin Rd., Ste. 2500  
Southfield, MI 48034  
Tel:   (248) 351-3000  
jrose@taftlaw.com  
yiyob@taftlaw.com  
*Attorneys for Defendant*

---

## PLAINTIFF KASSANDRA MEMMER'S SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S OCTOBER 24, 2025 ORDER FOR SUPPLEMENTAL BRIEFING

.

**TABLE OF CONTENTS**

Introduction .................................................................................................................... 1

Whether the EFAA applies if Memmer fails to plausibly allege a viable sexual harassment claim under Title VII of the Civil Rights Act of 1964 ("Title VII" or Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). ........................................................................................................ 1

Does UWM contend that Memmer fails to plausibly allege a viable claim and, if so, why? How does Memmer respond. ................................................................................................ 2

*Pregnancy Discrimination Is Sex Discrimination Under Title Vii And Must Be Subject To The EFAA* ............................................................................................................................... 3

*Plaintiff's Hostile Workplace Environment and Retaliation Claims Relate To The Conduct That Is Alleged To Constituent A Sexual Harassment Dispute And Should Be Subject To The EFAA* 5

What Impact, if any, does the Sixth Circuit Court of Appeal's decision in *Bivens v. Zep, Inc.*, 147 F.4th 635 (2025), have on the viability of Memmer's claim. ............................................ 13

Any other arguments relevant to the application of the EFAA, not included in the parties' previous briefs. ............................................................................................................. 13

CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) .................................. 2, 3
*Baldwin v. TMPL Lexington LLC*, 2024 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 19, 2024) ................... 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).................. 2, 3
*Bivens v. Zep, Inc.*, 147 F.4th 635 (2025) ................................................................................................. 12
*Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996)............................................ 4
*Bruce v Adams*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 33532, (MD Tenn, Feb. 25, 2025).......... 11, 12
*Cornelius v CVS Pharmacy Inc*, 133 F.4th 240, 244 (CA 3, 2025) ............................................................ 13
*Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023)................................................................................. 1
*Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532–33 (S.D.N.Y. 2024) ......................................... 5
*Dolter v. Wahlert High Sch.*, 483 F. Supp. 266, 270 (N.D. Iowa 1980) ..................................................... 4
*Erickson v. Pardus*, 551 US 89; 93 (2007) ............................................................................................ 3, 7
*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).................................................................................. 6
*Johnson v. Everyrealm, Inc*, 657 F. Supp. 3d at 562 n.23............................................................................ 5
*Jones v. Bock*, 549 U.S. 199, 215 (2007) ................................................................................................. 3
*Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992) ...................................... 6
*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) .................................. 8
*Memmer v United Wholesale Mtg, LLC*, 135 F.4th 398, 409 (CA 6, 2025) ............................................... 13
*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)........................................................................ 6
*Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir.), cert. denied, 144 S. Ct. 2689 (2024)................................................................................................................................................... 3
*Olivieri v Stifel,* 112 F.4th 74, 77 (CA 2, 2024)......................................................................................... 8
*Parks v. Nordson Med. Of NH Inc.,* No 1:25-CV-138, 2025 WL 2177177 (E.D. Tenn July 31, 2025) ..... 10
*Rayford v. Ill. Cent.* R.R., 489 Fed. App'x 1, 5-6 (6th Cir. 2012) ............................................................. 10
*Redlin v. Grosse Pointe Pub. Sch. Sys.,* 921 F.3d 599, 615 (6th Cir. 2019) ................................................. 9
*Rudisill v. McDonough*, 601 U.S. 294, 311 (2024).................................................................................... 1
*Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016).................................................................................. 2
*Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023)............................................................. 5

**Statutes**

Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021, 9 U.S.C. § 401 ......... 1, 2, 5, 13
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-17 ............................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................................. 2

**Introduction**

This Court's October 24, 2025 Order (ECF No.27) instructed the parties to provide supplemental briefing addressing five specific questions relating to the proper application of the Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 ("EFAA"), 9 U.S.C. § 401, to Plaintiff Kassandra Memmer's claims against Defendant. Plaintiff's answers to the Court's specific questions are set forth below.

1. Whether the EFAA applies if Memmer fails to plausibly allege a viable sexual harassment claim under Title VII of the Civil Rights Act of 1964 ("Title VII" or Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").

As a starting point, the EFAA would still apply whether or not Plaintiff fails to plausibly allege a viable sexual harassment claim.

The EFAA provides that "at the election of the person alleging conduct constituting a sexual harassment dispute ... no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law" relating to the "sexual harassment dispute." EFAA 9 U.S.C. § 402(a).

The statute does not define "election" or specify any procedures for making an election. See 9 U.S.C. §§ 401-402. In the absence of a statutory definition, the Court should give "election" its "ordinary, contemporary, common meaning." *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023) (internal quotations omitted). see also *Rudisill v. McDonough*, 601 U.S. 294, 311 (2024) ("to `elect' just means to choose"). An election, therefore, is just "[t]he exercise of a choice." Election, Black's Law Dictionary (12th ed. 2024).

Additionally, the statute does not define "alleging" or "allege". See 9 U.S.C. §§ 401-402. In the absence of a statutory definition, the court should give "allege" its "ordinary, contemporary, common meaning." *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023)

1

(internal quotations omitted). Black's Law Dictionary defines "allege" as "assert[ing] as true, esp. that someone has done something wrong, **though no occasion for definitive proof has yet occurred.**" Allege, Black's Law Dictionary (11th ed. 2019) (emphasis added). Therefore, to allege, is just to assert as true that someone has done something wrong. *Id.*

Accordingly, the clear statutory language of the act clearly makes it Plaintiff's choice to arbitrate, and, all she must to do is assert as true that Defendant has violated Title VII – as Plaintiff has done *See ECF No. 1:* Complaint. *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says."). Nothing else is required of Plaintiff because Congress did not require plaintiffs to plead or raise the EFAA's protections at any particular time or in any specific way and instead just required plaintiffs to allege a claim and then provided Plaintiff's the choice of venue to have that claim resolved. *See* 9 U.S.C. § 402(a).

2. Does UWM contend that Memmer fails to plausibly allege a viable claim and, if so, why? How does Memmer respond.

At the outset, it's important to note that this Defendant failed to raise this argument when it filed its original 12(b)(6) motion to dismiss in June, and, accordingly has waived this argument pursuant to Fed. R. Civ. P. 12(g)(2).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal* at 668. The low bar required to avoid dismissal under Fed. R. Civ. P. 12(b)(6) is well illustrated by a slight rephrasing of the central question used by federal courts in determining whether a complaint states a claim for relief, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is ***not*** entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (emphasis added).

Contrary to Defendant's implicit argument throughout its motion, at the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case, as would be required at the summary judgment stage under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir.), cert. denied, 144 S. Ct. 2689 (2024). Even more the case law makes clear Plaintiff is note even required to "specifically plead[] facts that could support" a plaintiff's claims. See *Iqbal*, 556 U.S. at 678 (a complaint "does not require "detailed factual allegations" under Fed. R. Civ. P. Rule 8); *Twombly*, 550 U.S. at 563 (2007) (a claim "may be supported by showing any set of facts consistent with the allegations in the complaint."). See also *Erickson v. Pardus*, 551 US 89; 93 (2007) ("[s]pecific facts are not necessary").

A. Pregnancy Discrimination Is Sex Discrimination Under Title Vii And Must Be Subject To The Efaa

As the United States Department of Labor makes clear, pregnancy discrimination is sex discrimination within the meaning of Title VII:

> Title VII of the Civil Rights Act of 1964 (Title VII): Enforced by the EEOC, Title VII protects applicants and employees from discrimination based on pregnancy, childbirth, or related medical conditions and requires covered employers to treat workers affected by pregnancy, childbirth, or related medical conditions the same as others similar in their ability or inability to work. Title VII was amended by the Pregnancy Discrimination Act (PDA) to make clear that discrimination based on pregnancy, childbirth, or related medical conditions **is a form of sex discrimination prohibited by Title VII.**

3

FACT SHEET: Protecting Individuals From Pregnancy Discrimination, U.S. DEPT. OF LABOR, Dec. 10, 2024, https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/external/compliance-assistance/fact-sheet-pregnancy-20250128 (emphasis added). Further, it is clear Sixth Circuit precedent that pregnancy discrimination is sex discrimination. *Cline v Catholic Diocese*, 206 F3d 651, 658 (CA 6, 1999) ("[D]iscrimination based on pregnancy is a clear form of discrimination based on sex…") *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996) ("Congress manifested its belief that discrimination based on pregnancy constitutes discrimination based on sex."); *Dolter v. Wahlert High Sch.,* 483 F. Supp. 266, 270 (N.D. Iowa 1980) (stating that a school has violated Title VII if it terminates a plaintiff for pregnancy).

In the case at bar, Plaintiff has clearly presented allegations sufficient to state a claim for pregnancy discrimination, which is sex discrimination in all relevant jurisdictions. Plaintiff provided Defendant with knowledge of her pregnancy. *See ECF No. 1* at ¶28. Plaintiff turned down a promotion because of said pregnancy. *Id.* at ¶26 and believes Defendant was not happy with her decision to turn down the promotion. *Id at* ¶30. Even more, Plaintiff alleges she was told by a supervisor "denying [the promotion] did not look good to Defendant and Defendant was going to start making people do [the job that Plaintiff turned down]." *Id.* at ¶27. Plaintiff asked and was denied an opportunity to work from home because of her pregnancy. ¶38 & ¶42. Additionally, Plaintiff alleges her manager did not understand why the request was denied. ¶43. Further, Plaintiff alleged a comparator who was not pregnant and treated very differently than her. *Id.* at ¶41. Plaintiff finishes the allegations in her complaint by clearly providing Defendant with notice of her intended claim by stating, "Defendant's conduct, as alleged herein, violated

4

Title VII, which makes it unlawful to sexually harass an employee or discriminate against said employee on the basis of gender." *Id.* at ¶225.

At the very least, Plaintiff's complaint presents a situation in which a disparate impact exists, however, Plaintiff would need to have access to discovery to prove her claim. However, it is plain on the complaint Plaintiff provided Defendant with notice of her pregnancy. *Id. at* ¶28. Further, alleges a conversation she had with a manager in which he stated that, "no exceptions will be made for anyone to work from home and that Defendant is not a work from home company." *Id* at ¶42. The only logical conclusion one could draw from a no exception work from home policy is that it disparately impacts pregnant females, such as Plaintiff. Accordingly, Plaintiff has stated a claim related to disparate impact and must be allowed to discovery to prove her claims.

> B. Plaintiff's Hostile Workplace Environment and Retaliation Claims Relate To The Conduct That Is Alleged To Constituent A Sexual Harassment Dispute And Should Be Subject To The EFAA

As discussed *surpa*, the EFAA does not state that only certain claims are subject. 9 U.S.C. § 401. Instead, the definition of sexual harassment dispute is "…a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* at §401(4). Courts have consistently held that this includes claims arising from the same employment relationship, personnel decisions, factual record, and parties. See, e.g.: *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532–33 (S.D.N.Y. 2024) (EFAA applies where claims stem from same relationship and events); *Baldwin v. TMPL Lexington LLC*, 2024 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 19, 2024), at *8 (labor claims "factually and temporally" tied to harassment claims fall within scope of EFAA); *Johnson v. Everyrealm, Inc*, 657 F. Supp. 3d at 562 n.23 (claims "clearly properly joined" where arising from same employment); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023) (wage and injury claims "intertwined" with harassment

5

claims). In the case at bar, Plaintiff is clearly alleging that her reports of the sexual harassment by the broker and her requests for accommodation of her pregnancy clearly relate to conduct that allege sexual harassment under the ELCRA and Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex," among other protected characteristics. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-17; see also *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This prohibition "includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Under this prohibition, **courts broadly recognize two types of sexual harassment claims**: (1) a claim of harassment that creates an offensive or hostile environment, also known as a **hostile work environment claim;** and (2) quid pro quo harassment, in which a supervisor demands sexual favors as a condition for job benefits. *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir. 1992). Clearly, and without dispute, Title VII and the courts interpreting it consider hostile workplace environment claims as sexual harassment claims and Plaintiff's hostile workplace environment claim must be considered applicable to the EFAA and all of Plaintiff's claims must continue to Court and not arbitration.

In the case at bar, Plaintiff clearly presents allegations sufficient to state a claim for a hostile workplace environment and it is far more than three paragraphs as Defendant states. *ECF No. 29* PageID.322. Plaintiff explains this behavior in her charge of discrimination she filed with the EEOC:

> I had suffered from sexual harassment on multiple occasions. Brokers would continuously watch my u-snap[,] recorded videos at odd times of the night over & over again, as well as hit on me via e-mail. These incidents were reported to team leads and nothing was

6

> done about any of these incidents. When also reporting incidents, I was told by one team lead that it is common for brokers to talk poorly to women as well as treat them differently than the men that work at UWM and also told by another team lead to just laugh it off and not worry about it.

*See Memmer* R. 9-3 (Notice of Right to Sue) (Page ID #116).

These facts were are further alleged in the complaint, despite the fact that specificity is not required. *Erickson*, 551 US at 93 (2007). There she relays events related to one of the brokers in question at ¶¶35-36 where she stated:

> 35. Plaintiff sent "U-Snaps" to the broker and was uncomfortable sending them from her home. The broker started contacting her via e-mail and hitting on her, stating that she was too pretty to be an underwriter and that he was going to tell her CEO Matt Ishbia to make her a model for the company.
> 36. Plaintiff informed Tyler Creager, leader filling in for her leader for the day, about e-mail that she received from broker and he stated that it's just best that she just laugh about it and forget about it. This incident was never reported, although it should have been.

Finally, Plaintiff even lists out the specific claim to provide notice to Defendant:

### COUNT XI
### GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF TITLE VII

223. Plaintiff incorporates by reference all allegations in the preceding paragraphs.
224. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.
225. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to sexually harass an employee or discriminate against said employee on the basis of gender.
226. A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.
227. Plaintiff is a woman and a member of a protected class.
228. Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.
229. A male broker who worked for Defendant sexually harassed Plaintiff.

230. The communication and conduct from the broker was unwelcomed.
231. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.
232. Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.
233. Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to her.
234. As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.
235. Plaintiff requests relief as described in the Prayer for Relief below.

*Id.* at ¶¶ 223-235.

Likewise, Plaintiff is alleging that her termination was related to the reporting of the sexual harassment by the broker and in retaliation for reports and complaints related to Defendant's non-compliance with her health and safety concerns related to her pregnancy, which, also clearly relates to conduct alleging sexual harassment. The Court in *Olivieri v Stifel,* 112 F.4th 74, 77 (CA 2, 2024), like many other courts, "recognized that retaliation for reporting discrimination "is reasonably related to the underlying discrimination," such that a plaintiff who exhausts a discrimination claim with the EEOC may also pursue a claim for retaliation. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks and citation omitted). Under similar reasoning, retaliation resulting from a report of sexual harassment is "relat[ed] to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401(4); *see Johnson*, 657 F. Supp. 3d at 551 n.13, 559 (reaching same conclusion)."

In the case at claim at bar, Plaintiff alleges that she made multiple complaints and reports to her bosses relating to her uneasiness and fear to have to work in the office due to safety concerns

8

related to her pregnancy. *Id.* at ¶¶37-40. Additionally, she stated that she was being screamed at by broker employees for not accepting a promotion because of her pregnancy. *Id.* at ¶31. Moreover, Plaintiff alleges that "Defendant was not happy with Plaintiff's decision not to take the team lead job[,]" which she turned down because of her pregnancy. *Id.* at ¶¶29-30. Further, Defendant informed Plaintiff that if she did not return to work on a specific date within the same month of Plaintiff discussing with her superiors her ability to work from home because of her pregnancy. *Id.* at ¶42 & ¶45. *Redlin v. Grosse Pointe Pub. Sch. Sys.,* 921 F.3d 599, 615 (6th Cir. 2019) "temporal proximity [between a Title VII complaint and an adverse employment action] alone can be enough circumstantial evidence of causation if the two are sufficiently close in time." Additionally, Plaintiff's direct supervisor was "upset because he felt it should have been approved" and he "did not understand why [Defendant] denied the request." *ECF No. 1* at ¶43. Lastly, Plaintiff lists an exception to this policy despite being informed there will be no exceptions. *Id.* at ¶¶41-42. These facts taken together easily could lead one to believe that Plaintiff was retaliated against for attempting to assert her rights as a pregnant woman. If there is a clear no exceptions policy, the exception Plaintiff lays out is evidence of that excuse being pretextual. Even more, if the policy was clear and did no have exceptions, more evidence for pretext is her team leads confusion and anger.

Finally, Plaintiff's first count leaves no questions whether Plaintiff states the claim when she says:

**COUNT I**
**RETALIATION IN VIOLATION OF TITLE VII**

49. Plaintiff incorporates by reference all allegations in the preceding paragraphs.
50. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

>   51. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.
>   52. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.
>   53. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported to human resources active racial discrimination by Defendant.
>   54. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.
>   55. After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts.
>   56. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.
>   57. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

*Id.* at ¶¶49-57.

Defendant cites *Rayford v. Ill. Cent.* R.R., 489 Fed. App'x 1, 5-6 (6th Cir. 2012) to argue that the alleged conduct in this case is insufficient to support a claim. But Rayford is entirely inapposite. That case involved a motion for judgment on the pleadings after a full trial had been conducted and both parties had engaged in discovery and presented their evidence. The court's ruling in Rayford came only after the plaintiff had the opportunity to develop the record, and the jury was unable to reach a verdict. Here, by contrast, Appellant is attempting to prevent this case from ever reaching discovery or trial. The procedural posture could not be more different to the point it seems irrelevant. Rayford involved a post-trial analysis of a fully developed record; this case involves a pre-trial effort to compel arbitration and silence the claims before they are ever heard. This comparison fails.

For its main Argument, Defendant cites to *Parks v. Nordson Med. Of NH Inc.,* No 1:25-CV-138, 2025 WL 2177177 (E.D. Tenn July 31, 2025). *ECF No. 29,* PageID. 318.  However, the cases are very distinguishable.  First, and foremost, it must be stated that the Plaintiff in *Parks was a pro-se* Plaintiff and further, only alleged two distinct acts of Sexual Harassment. *Id.* at *15 & * 23.  In the case at bar, Plaintiff alleges multiple and continuous adverse and harassing action relating the not only her as a woman, but also her as a pregnant woman.  Moreover, Plaintiff has listed mentioned multiple reports of the conduct, differing treatment then a comparator, and a policy that has a direct disparate impact on her.  Further, Plaintiff's issues were ongoing and continuing for her entire term of employment and she was getting differing messages from superiors related to allegedly clear and balanced policy. Understandably, Defendant would happily shrink Plaintiff's claim into two distinct occasions, however, like most everything it is much more nuanced and pervasive

Instead, Plaintiff asks this Court to consider *Bruce v Adams*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 33532, (MD Tenn, Feb. 25, 2025) for a more adequate representation of the proper application of a hostile workplace environment claim at the pre discovery stage. In *Bruce*, Plaintiff presented three examples of harassing conduct in which she was forced to endure while working at an attorney's office. *Id.* at *22.  Specifically, Plaintiff alleged that the same co-worker staetd, 1) used the term "ho-no" instead of oh-no, 2) Stated let's have Plaintiff go down there in a short skirt, and 3) made a comment about how "hot" it would be to see Plaintiff and another paralegal engage in sexual activity. *Id.*  Despite the court mentioning that this was a close call, the court held, "the court finds that the plaintiff has adequately pleaded a hostile work environment claim, for purposes of Rule 8 of the Federal Rules of Civil Procedure and the standards articulated in *Twombly* and *Iqbal*. She is not required to allege every instance of harassing conduct, and the

11

three examples of inappropriate comments are apparently intended to be just that: examples." *Id.* at *22-23. The court went on to explain:

> Although none of the conduct qualifies as severe, it was, at least as alleged in the [first amended complaint], pervasive. When the facts are fleshed out through discovery, it may well be that the alleged conduct was neither objectively nor subjectively sufficiently pervasive to create a hostile working environment. For now, however, viewing the facts in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the court finds that the FAC very marginally alleges that Pinson's "'repeated conduct' created a hostile work environment." *Ogbonna-McGruder*, 91 F.4th at 840

*Id.* at *23.

Like *Bruce*, Plaintiff is simply listing an example of the type of harassment she was forced to endure. As can be seen from Exhibit 1 her charge of discrimination, there are multiple individuals, which must be fleshed out in discovery. Additionally, like *Bruce* Plaintiff is alleging that this unwelcome and harassing conduct was present for her entire term of employment. Accordingly, Plaintiff must be allowed to access discovery to find evidence to prove her claims. In the alternative, Plaintiff must be provided the opportunity to amend her complaint to provide more examples of the conduct so that this Court is satisfied that she has met her obligation to state a claim.

3. What Impact, if any, does the Sixth Circuit Court of Appeal's decision in *Bivens v. Zep, Inc.*, 147 F.4th 635 (2025), have on the viability of Memmer's claim.

The Sixth Circuit Court of Appeal's decision in *Bivens v. Zep., Inc.* 147 F.4th 635 (2025) (*"Bivens"*) has little to no impact on the viability of Plaintiff's claim. Plaintiff ahs alleged the broker was an employee of Defendant at ECF No. 1 at ¶229 when she stated, "[a] male broker who worked for Defendant sexually harassed Plaintiff." At this stage of pleading, all of Plaintiff's allegations must be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Accordingly,

12

Defendant's contention that, "Memmer does not allege she was sexually harassed by a UWM employee" is provably false. *ECF No. 29 Page ID. 325.*

Even more, even if Defendant was correct, the Third Circuit in *Bivens* does not hold that harassment and the creation of a hostile workplace environment by a non-employee is a complete bar to recovery. Instead, it simply changes the proofs Plaintiff must prove. *Bivens* at 635. The only way for Plaintiff to be able to reach this proof would be through discovery. Defendant seems to implicitly agree with this position as it quotes the portion of *Bivens* that mentions that this would be "the key 'factual question' in a Title VII dispute…" *ECF* No. 29, PageID. 327.

4. What discovery does Memmer believe she needs, if any, relevant to determining when a dispute arose relevant to her sexual harassment claims.

In this case on appeal, a panel of judges sitting on the third Circuit Court of Appeals agreed with the Third Circuit Court of Appeals in *Cornelius v CVS Pharmacy Inc*, 133 F.4th 240, 244 (CA 3, 2025) and held "that the 'ordinary meanings of both 'dispute' and 'arise'' compel[] the conclusion that EFAA applies 'when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position.'" *Memmer v United Wholesale Mtg, LLC*, 135 F.4th 398, 409 (CA 6, 2025) (citing *Cornelius* at *5).

The Ending Forced Arbitration Act of Sexual Assault and Sexual Harassment Act of 2021 was enacted and became law on March 3, 2022. *See* 9 U.S.C. § 401 et seq. It seems to be irrefutable that the first time Plaintiff went to the Equal Employment Opportunity Commission ("EEOC") related to her claims with Defendant. Plaintiff first went to the EEOC on April 26,

13

2022. *See Memmer at \*26.*[1]  Accordingly, it seems clear without discovery that this is when the dispute arose and Plaintiff's claims arose after the inaction of the EFAA.

5. Any other arguments relevant to the application of the EFAA, not included in the parties' previous briefs.

Defendant raising no additional issues, Plaintiff is of the position that she has fully briefed this Court on the questions presented.

## CONCLUSION

For the reasons stated, Plaintiff requests that this Honorable Court deny the renewal of Defendant's Motion to Dismiss, allow Plaintiff's claims to move forward to discovery and grant Plaintiff any other relief this Honorable Court deems equitable and just.

Dated: December 12, 2025                Respectfully Submitted,

/s/ *Connor B. Gallagher*
Carla D. Aikens (P82104)
CARLA D. AIKENS, P.L.C.
*connor@aikenslawfirm.com*
*Attorneys for Plaintiff*

---

[1]  Plaintiff needs to point out that the original complaint has a typo and that the incorrect date is provided for when Plaintiff went to the EEOC and that she did in fact first go to the EEOC on April 26, 2022.

14

**Appendix of Unpublished Authority**

*Baldwin v. TMPL Lexington LLC*, 2024 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 19, 2024)

*Cornelius v CVS Pharmacy Inc*, 133 F.4th 240, 244 (CA 3, 2025)

*Memmer v United Wholesale Mtg,* LLC, 135 F.4th 398, 407 (CA 6, 2025)

*Olivieri v Stifel,* 112 F.4th 74, 77 (CA 2, 2024)

*Parks v. Nordson Med. Of NH Inc.,* No 1:25-CV-138, 2025 WL 2177177 (E.D. Tenn July 31, 2025)

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on December 12, 2025, by:

/s/Katarzyna Nowicki