UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA MEMMER,

       Plaintiff,

v.                                 Case No. 23-cv-10921
                                 Honorable Linda V. Parker

UNITED WHOLESALE MORTGAGE,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION

On April 18, 2025, the Sixth Circuit Court of Appeals reversed this Court's decision compelling Plaintiff Kassandra Memmer to arbitrate all of the claims she asserts in the lawsuit, including her sexual harassment claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398 (6th Cir. 2025). In its decision, the Sixth Circuit, as a matter of first impression in the circuit, interpreted the accrual provisions of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"). *Id.* at 403. The Sixth Circuit then remanded the matter for this Court to apply that interpretation and decide whether the EFAA governs this dispute. *Id.* at 413. The appellate court recognized, however, that "other questions may become relevant"

on remand:  "For example, must [Memmer]'s sexual harassment claim be

'plausible' to remain in court?  Does Memmer's single sexual harassment claim

suffice to preserve her entire case in court, or should the other claims be sent to

arbitration?"  *Id.* (internal citations removed).

On remand, Defendant United Wholesale Mortgage ("UWM") filed a

renewed motion to dismiss and to compel arbitration.  (ECF No. 24.)  In the

motion, UWM focused on the question of when Memmer's sexual harassment

claims accrued.  (*See generally id.*)  However, if the Court found that Memmer's

Complaint does not resolve the issue, UWM asserted that the Court should: (a)

decide whether discovery and an evidentiary hearing is needed with respect to this

limited issue; and (b) entertain additional briefing on the other questions raised by

the appellate court, such as whether Memmer's sexual harassment claims are

"plausible[.]"[1]  (*Id.* at PageID.228-29.)  Memmer filed a response to the motion

(ECF No. 25), and UWM replied (ECF No. 26.)

After reviewing the parties' briefs, the Court ordered supplemental briefing

on several issues it found relevant to UWM's motion to compel arbitration,

including whether the EFAA applies if Memmer fails to allege a plausible sexual

harassment claim and whether the claims are plausibly alleged.  (ECF No. 27.)

---

[1] Therefore, UWM did not forfeit any argument as to the plausibility of Memmer's sexual harassment claims, as Memmer recently asserted.  (*See* ECF No. 31 at PageID.339.)

2

The Court finds these issues crucial to the question of whether the EFAA applies, and thus whether to grant or deny UWM's motion.  It is more efficient to address all of the questions relevant to arbitration together, rather than after the accrual issue, as UWM suggested.  *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) (collecting cases recognizing the district court's "power to control its own docket"). If the EFAA applies only if a plaintiff alleges a plausible sexual harassment claim and neither of Memmer's claims is plausible, the question of when the claim accrued becomes irrelevant.  The supplemental briefing recently was completed.  (ECF Nos. 29, 31, 32.)

Having reviewed the parties' initial and supplemental briefs, the Court now finds the facts and legal arguments adequately presented.  Therefore, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting UWM's motion to compel.

## I.    Relevant Factual Background

Memmer worked as a mortgage underwriter at UWM from September 30, 2019, through July 9, 2021.[2]  (ECF No. 1 at PageID.2, 6 ¶¶ 6, 45.)  Relevant to her

---

[2] UWM is a mortgage company, but it does not offer mortgages directly to consumers.  *See* https://uwmcareers.com/company/about-uwm.  Instead, it works with independent mortgage brokers to provide home loan options to UWM clients. *See id.*

3

sexual harassment claims, Memmer alleges that a "broker started contacting her by e-mail and hitting on her, stating that she was too pretty to be an underwriter and that he was going to tell her CEO Matt Ishbia to make her a model for the company." (*Id.* at PageID.5 ¶ 35.)  Memmer alleges that she "informed Tyler Creager, leader filling in for her leader for the day, about e-mail that she received from the broker and he stated that it's just best that she just laugh about it and forget about it." (*Id.* ¶ 36.)  Memmer claims "[t]his incident was never reported, although it should have been." (*Id.*)

In May 2021, Memmer informed UWM that she was pregnant.  (*Id.* at PageID.4 ¶ 28.)  UWM subsequently offered Memmer a promotion to team lead, but she indicated that she would consider it only after her maternity leave because she did not want added extra stress during her pregnancy.  (*Id.* ¶ 29.)  Memmer believes UWM "was not happy with [her] decision not to take the team lead job at that time." (*Id.* ¶ 30.)

In June 2021, Memmer sought permission to work from home, and she provided UWM with "her doctor's note outlining her leave of absence in order to insure her health and that of her unborn child." (*Id.* at PageID.5 ¶ 38.)  After

4

UWM denied Memmer's request, she resigned her employment on July 9, 2021.

(*Id*. at PageID.6 ¶ 45.)

## II.     Procedural Background

On April 19, 2023, Memmer initiated this lawsuit against UWM, alleging

the following claims:

- Retaliation in violation of Title VII and ELCRA (Counts I and II, respectively);

- Hostile workplace environment in that "any individual who reported or spoke out against [UWM']s discriminatory practices had an unworkable work environment" in violation of Title VII and ELCRA (Counts III and IV, respectively);

- Failure to accommodate Memmer's disability (i.e., "health complications due to being pregnant") in violation of the Americans with Disabilities Act ("ADA") and Michigan Person with Disabilities Civil Rights Act ("PWDCRA") (Counts V and VI, respectively);

- Retaliation for requesting an accommodation for Memmer's disability in violation of the ADA and PWDCRA (Counts VII and VIII, respectively);

- Disability discrimination in violation of the ADA and PWDRA (Counts IX and X, respectively);

- Sexual harassment in violation of Title VII and ELCRA (Counts XI and XII, respectively); and

- Violations of the Fair Labor Standards Act ("FLSA") (Counts XIII and XIV).[3]

---

[3] Count XIV is mislabeled as "Count II" in the Complaint.  (*See* ECF No. 1 at PageID.29.)

5

(*See generally* ECF No. 1.)  As relevant to the issues now before this Court, Memmer identifies only the communications from the male broker, which Memmer reported to Creager, as the basis for her hostile work environment claims within Counts XI and XII of her Complaint.  (*See id*. at PageID.26 ¶¶ 223-235; PageID.27 ¶¶ 236-247.)

In response to the Complaint, UWM filed a motion to dismiss and to compel arbitration, arguing that Memmer's claims are subject to an arbitration clause in her employment contract.  (ECF No. 7.)  In a decision filed on January 16, 2024, this Court held that the parties entered into a valid arbitration agreement, that Memmer's claims fell within the scope of the agreement, and that her statutory claims were not non-arbitrable.  (ECF No. 13.)  The Court, therefore, granted UWM's motion, dismissed Memmer's Complaint without prejudice, and entered a Judgment.  (*See id.*; *see also* ECF No. 14.)  Memmer appealed.  (ECF No. 15.)

As indicated earlier, the Sixth Circuit issued its decision on April 18, 2025. The appellate court first addressed and upheld the finding that the parties entered into a valid arbitration agreement and that Memmer's claims fall within the scope of the agreement.  *Memmer*, 135 F.4th at 404-06.  The Sixth Circuit then indicated: "At this step, [it] would historically have concluded that Memmer's claims were arbitrable[,]" noting the FAA's expression of "a strong public policy favoring arbitration of a wide class of disputes."  *Id*.  However, the court found that the

6

EFAA, which went into effect on March 3, 2022, potentially applied to Memmer's sexual harassment claims and allowed her to avoid arbitration, as least as to those claims. *Id.* at 406-07. The Sixth Circuit remanded the matter for this Court to determine whether the statute applies.

### III.    Applicable Law and Analysis

#### A.    The EFAA Generally

The EFAA provides, in relevant part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA "allows an individual claiming sexual harassment or assault to elect judicial resolution, rather than arbitral resolution of their claims, even if the individual previously agreed to arbitrate such claims if they arose." *Memmer*, 135 F.4th at 406.

In a statutory note, Congress provided that the EFAA is "applicable with respect to any dispute or claim that arises or accrues on or after March 3, 2022[.]" 9 U.S.C. § 401 note. Addressing the statute in the present matter, the Sixth Circuit held, as a matter of first impression, that "dispute" and "claim" are distinct. *Memmer*, 135 F.4th at 407. Therefore, to analyze whether the EFAA applies, the

relevant questions are when the plaintiff's sexual harassment and/or assault claim(s) accrued *and* when a dispute arose. *Id.* at 407-13.

As the Sixth Circuit explained further, "[a] claim accrues 'when the plaintiff has a complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'" *Id.* at 408 (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024)) (additional quotation marks and citation omitted).  As the record stood on appeal, the appellate court found that Memmer's sexual harassment claims appeared to accrue before the EFAA's March 3, 2022 enactment "because she quit her job several months prior, and any injury, therefore, preceded that date." *Id.* at 413.  Memmer asserts nothing new in response to UWM's pending motion to alter that conclusion.  Thus, the EFAA applies only if the parties' "dispute" arose after March 3, 2022.

Prior to its decision in this matter, the Sixth Circuit "lack[ed] a set legal framework to determine when a dispute arises." *Memmer*, 135 F.4th at 409.  It adopted an interpretation consistent with the Third Circuit Court of Appeals' decision in *Cornelius v. CVS Pharmacy, Inc.*, 133 F.4th 240, 247-48 (2025), and the Eighth Circuit Court of Appeals' decision in *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 897-98 (2024).  *See id.*  Ultimately, the Sixth Circuit held, "[t]he relevant question is when the parties became adverse to one another." *Id.*

The court explained that "[d]epending on the facts, a dispute could arise when an injured party sends the defendant a demand letter, files an administrative charge, requests arbitration, commences a lawsuit, or some other event occurs." *Id.* (citing *Famuyide*, 111 F.4th at 897-98). "In many cases," the court observed, "the dispute will arise after the claim accrues. For example, a sexual-harassment claim may accrue when one employee makes an inappropriate remark to another, but the dispute may not arise until the employer resists the employee's complaints." *Id.* The Third Circuit explained in *Cornelius*:

> In our view, a "dispute . . . arises" when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position. *See Famuyide*, 111 F.4th at 898 (noting that a dispute had not arisen where the plaintiff "had not asserted any right, claim or demand against Chipotle, and Chipotle had not registered disagreement with any position of" the plaintiff's). . . . It requires some opposition between the employer and employee but is not tethered to a particular process. Thus, a dispute can arise upon the filing of an internal complaint, so long as the employer expressly or constructively disagrees with the employee's position.

133 F.4th at 247-48. The Sixth Circuit "agree[d]" with this holding. *Memmer*, 135 F.4th at 409.

In *Cornelius*, the Third Circuit concluded that a dispute between the plaintiff and her employer arose when the plaintiff submitted written, internal complaints to her employer and the employer "arbitrarily and sexistly sided with [the alleged

9

harasser], dismissed her complaints of discrimination, and utterly failed to remedy the hostile work environment." *Id*. at 248 (cleaned up).  UWM argues here that, similarly, the dispute between it and Memmer concerning her sexual harassment claims arose when Memmer complained about the broker's comments to Creager, and Creager allegedly never reported the incident or took any steps to alleviate her concerns, but instead told Memmer to "forget about it" and "laugh" about it.  (*See, e.g.*, ECF No. 24 at PageID.243 (quoting ECF No. 1 at PageID.5 ¶ 35).)  Memmer contends in response that "[m]ere inaction, silence, or failure to respond" does not evidence a dispute, and that her Complaint does not "allege any back-and-forth regarding the harassment until [she] filed her EEOC charge in April 2022—after EFAA's effective date."  (ECF No. 25 at PageID.280, 284.)

According to Memmer, *Cornelius* is distinguishable for two reasons.  First, she "did not file formal internal complaints" but made only "a single, informal remark . . . to a temporary team lead, not Human Resources, not management." (*Id*. at PageID.293.)  Second, Memmer argues that "[t]here was no opposition to a protected right . . . UWM did not issue a denial, retaliation, or even acknowledgement of any legal claim."  (*Id*. at PageID.294.)  Memmer characterizes Creager's response to her complaints about the broker's alleged sexual harassment as "a stray comment from a temporary supervisor" or "a single dismissive comment by a mid-level employee."  (*Id.* at PageID.292, 296.)

10

### B. Whether a Dispute Arose When Memmer Complained to Creager

If Creager was a UWM supervisor, as Memmer initially suggested in her Complaint (*see, e.g.*, ECF No. 1 at PageID.26 ¶ 226), this case appears indistinguishable from *Cornelius*. The *Cornelius* court held that a dispute arose when the plaintiff raised concerns about her treatment to her harasser's supervisor and the employer and supervisor " 'simply dismissed' her complaints" and, to the plaintiff's knowledge, "took [no] action against" the alleged harasser. 133 F.4th at 243-44. Memmer similarly alleges that when she complained to Creager about the broker's comments, Creager responded that "it's just best that she just laugh about it and forget about it" (i.e., simply dismissed her complaints), and the "incident was never reported" and UWM "failed to remedy the unwelcomed conduct or communication" (i.e., neither Creager nor UWM took any action). (ECF No. 1 at PageID.5 ¶ 36; *id.* at PageID.26 ¶ 232.)

*Cornelius* is not distinguishable because the plaintiff, while raising concerns to the harasser's supervisor, also submitted written complaints. As the Third Circuit advised in *Cornelius*, a dispute does not require an internal complaint "tethered to a particular process." *Id.* at 248. A dispute does not arise only at the filing of an external complaint. *Id.* at 247. It simply requires "some opposition between the employer and employee." 133 F.4th at 248. In *Cornelius*, the appellate court "ha[d] no trouble concluding that [the employee]'s dispute arose"

once she complained internally to her employer and, as the employee alleged, her employer "arbitrarily and sexistly sided with [the harasser], dismissed her complaints . . ., and utterly failed to remedy the hostile work environment." *Id.* (brackets in original removed).

Ultimately, however, the Court finds it unnecessary to reach a definitive decision on this issue. This is so because even if a dispute did not arise when Memmer complained to Creager, or if Creager's response simply was a "dismissive complaint by a mid-level employee" and "not management"—as Memmer contends in her response brief (ECF No. 25 at PageID.293, 296)—the Court concludes that the EFAA is inapplicable for the reasons discussed below.

### C.    The Appropriate Standard for Evaluating the EFAA's Applicability

As indicated above, the EFAA grants the power to "the person *alleging* conduct *constituting* a sexual harassment dispute or sexual assault dispute" to elect judicial resolution, rather than arbitration, even if the individual previously agreed to arbitrate such a claim. 9 U.S.C. § 402(a) (emphasis added). The statute defines "a sexual harassment dispute" as "a dispute relating to conduct that is *alleged to constitute* sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added). The italicized words are key to one of the questions posed by the Sixth Circuit on appeal here: "Must [a] plaintiff's sexual harassment claim be 'plausible' to remain in court?" *Memmer*, 135 F.4th at 413

12

(citing *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583-88 (S.D.N.Y. 2023)).

Memmer conveniently skips "constitute" when parsing the EFAA's language to

argue that a claim need not be plausible to enforce the statute. (*See* ECF No. 31 at

PageID.338-39.)

As relevant here, "constitute" means "[t]o give legal or appropriate

procedural form to (something); to establish by law." *Constitute*, Black's Law

Dictionary (12th ed. 2024). Thus, to invoke the EFAA, the plaintiff must "give

legal or appropriate procedural form" or "establish by law" "sexual harassment" or

"sexual assault[.]" In this Court's view, this cannot mean anything less than the

plausibility standard set forth in Supreme Court precedent. In other words, the

plaintiff must plead "sufficient factual matter, accepted as true, to" "plausibl[y]"

allege "sexual harassment" or "sexual assault" as defined under the law. *Ashcroft

v. Iqbal*, 550 U.S. 544, 555 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).

Numerous courts interpreting the EFAA, including the District Court for the

Southern District of New York in *Yost*, reached the same conclusion. *See, e.g.*,

*Yost*, 657 F. Supp. 3d at 585-88; *Mangum v. Ross Dress for Less, Inc.*, 777 F.

Supp. 3d 519, 528 (E.D.N.C. 2025); *Singh v. Meetup LLC*, 750 F. Supp. 3d 250,

253 (S.D.N.Y. 2024) (collecting cases); *Mitchell v. Raymond James & Assoc., Inc.*,

No. 8:23-cv-2341, 2024 WL 4486565, at *6 (M.D. Fla. Aug. 23, 2024); *Smith v.*

13

*Boehringer Ingelheim Pharms., LLC*, No. 3:24-cv-01266, 2025 WL 2403042, at

*5-6 (D. Conn. Aug. 19, 2025) (collecting cases); *Van De Hey v. EPAM Sys. Inc.*,

No. 24-cv-08800, 2025 WL 829604, at *3 (N.D. Calif. Feb. 28, 2025); *Bruce v.

Adams & Reese, LLP*, No. 3:24-cv-00875, 2025 WL 611071, at 1* n.2 (M.D.

Tenn. Feb. 25, 2025).   A handful of courts have found the EFAA applicable

provided the plaintiff alleges a "nonfrivolous" sexual harassment or sexual assault

dispute.  *See, e.g.*, *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 533

(S.D.N.Y. 2024) (concluding that the nonfrivolous standard applies to invoke the

EFAA but finding that the plaintiff met even the higher plausibility standard),

*appeal filed*, No. 24-3223 (2d Cir. Dec. 9, 2024); *Mackay v. PetSmart, Inc.*, No.

EDCV 25-1626, 2025 WL 3482620, at *4, *5 (C.D. Cal. Dec. 2, 2025) (adopting

the "nonfrivolous" standard but then finding that the plaintiff "fails to plausibly

allege a sexual harassment claim under [California law]"); *Cardenas v. F.D.

Thomas, Inc.*, No. 2:24-cv-01814, 2025 WL 418753, at *4 (E.D. Cal. Feb. 6, 2025)

(adopting the "nonfrivolous" standard and finding that the plaintiff "allege[d]

conduct constituting . . . sexual harassment" as he alleged "sex-specific and

derogatory terms," which were unwelcome, frequent, and severe).   As indicated,

this Court believes the majority view is the correct interpretation of the EFAA,

although Memmer fails to meet even the lower bar.

In addition to the wording of the statute, there are several reasons to apply a

plausibility standard, as the District Court for the Southern District of New York

outlined in *Yost*.  As another court summarized:

> First, Rule 12(b)(6) and the plausibility standard it imposes
> upon pleadings, as established in *Bell Atl. Corp. v. Twombly*,
> 550 U.S. 544 (2007)[,] and *Ashcroft v. Iqbal*, 556 U.S. 662
> (2009), are "well-known to Congress," allowing the reasonable
> inference that in passing the EFAA Congress "was aware that
> only plausible allegations of sexual harassment law had the
> capacity to proceed past the pleading stage in federal court."
> [*Yost*, 657 F. Supp. 3d at 585].  Second, allowing only plausible
> claims to trigger the EFAA vindicates the purpose of the Act,
> by enabling a claimant "to bring her claims of sexual
> harassment in court and to litigate them there through the point
> of their durable dismissal."  *Id*. at 586.  The court reasoned that
> if all of a plaintiff's claims related to a sexual harassment
> dispute are implausible under Rule 12(b)(6), the purpose of the
> EFAA is not served by allowing the remaining claims to
> proceed in court if they are otherwise subject to binding
> arbitration.  *Id*.  Third, the court considered the overall statutory
> scheme of the FAA—of which the EFAA is a part—and
> concluded that it could be destabilized by reading the EFAA to
> "tacitly void arbitration agreements after the point at which
> plaintiffs have proven themselves unable to plead claims of
> sexual harassment consistent with *Iqbal*."  *Id*.  Fourth, the *Yost*
> court cited other contexts in which courts have construed the
> term "allege" in a statute to imply "plausibly allege" in
> accordance with Rule 12(b)(6).  *Id*. at 587.

*Smith v. Boehringer Ingelheim Pharms.*, 2025 WL 2403042, at *5 (brackets and

footnotes removed).  As the Sixth Circuit recognized in the present matter, "[t]he

FAA expresses a strong public policy favoring arbitration."  *Memmer*, 135 F.4th at

406.  "[F]ailing to imply a plausibility requirement in the EFAA would run

15

contrary to the FAA's overall statutory scheme[.]" *Boehringer Ingelheim*, 2025 WL 2403042, at *6.

### C.     The Requirements of a Plausible Sexual Harassment Claim

Title VII prohibits an employer from discriminating against an employee "with respect to [the individual's] compensation, terms, conditions, or privileges of employment" based on sex.  42 U.S.C. § 2000e-2(a)(1).  "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment," and provides the basis for sex-based hostile work environment claims.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-66 (1986) (internal citation and quotations omitted).  Title VII does not expressly refer to "sexual harassment," but since *Meritor*, courts find "sexual harassment" to be a form of "discrimination because of sex."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Bivens v. Zep, Inc.*, 147 F.4th 635, 642 (6th Cir. 2025).

" 'Sexual harassment' is conceptually distinct from sex discrimination[,]" however.  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020); *see also Franz v. Five Rivers Metro Parks*, 254 F. Supp. 2d 753, 758 (S.D. Ohio 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  While all sexual harassment "that meets the statutory requirements" is prohibited discrimination, *Oncale*, 523 U.S. at 80, not all sex-based discrimination is sexual harassment, *see*

16

*Schramm v. Slater*, 105 F. App'x 34, 40 (6th Cir. 2004) ("Disparate treatment and hostile work environment arguments both allege a violation of Title VII rights. However, a disparate treatment argument is analytically distinct from a hostile work environment argument—the tests for the two theories of liability have different elements"); *Hunter v. Sec. of U.S. Army*, 565 F.3d 986, 994 (6th Cir. 2009) (quoting *Morgan*, 536 U.S. at 110) (Under Title VII, two types of actions may be brought: (1) 'discrete discriminatory acts,' and (2) claims alleging a 'hostile work environment.'"); *Singh*, 750 F. Supp. 3d at 258 (explaining that "not all gender discrimination is sexual harassment").

Congress presumably understood the distinction between sex discrimination and sexual harassment when it enacted the EFAA in February 2022. *See United States v. Hunter*, 12 F.4th 555, 565 (6th Cir. 2021) (citing *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 422 (2009)) ("We assume that Congress is aware of existing law when it passes legislation"); *see also id.* (citing *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986)) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Therefore, the Court assumes that Congress intended to exempt from arbitration only the subset of sex discrimination claims that constitute sexual harassment. *See Owens v. PricewaterhouseCoopers LLC*, 786 F. Supp. 3d 831, 844-45 (S.D.N.Y.

17

2025) (concluding that the EFAA applies only to the "subcategory" of conduct that constitutes "sexual harassment" rather than the "broader category of gender-based discrimination"); *Diaz-Roa*, 757 F. Supp. 3d at 545-46 (under EFAA, "sexual harassment is distinguished from discrimination on the basis of sex more generally because it involves either a quid pro quo or a hostile work environment based on sex"); *Singh*, 750 F. Supp. 3d at 258-59 (distinguishing sexual harassment from sex discrimination and holding that the plaintiff's discrimination claims "fail to trigger the EFAA"); *Montanus v. Columbia Mgmt. Inv. Advisers, LLC*, No. 25 CIV 2798, 2025 WL 3706567, at *4 (S.D.N.Y. Dec. 22, 2025) (explaining that " 'gender discrimination' and 'sexual harassment' are not coextensive" and that complaints alleging gender discrimination fall "outside the scope of the EFAA"); *Boehringer Ingelheim Pharms.*, 2025 WL 2403042, at *8 (same).

There are two forms of sexual harassment recognized under federal and Michigan law: *quid pro* quo sexual harassment and hostile-work-environment sexual harassment. *See Souther v. Posen Constr., Inc.*, 523 F. App'x 352, 354 (6th Cir. 2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-54 (1998)). Memmer alleges the latter. To state such a claim under Title VII or ELCRA, Memmer must show that (1) she is a member of a protected group, who (2) "was subject to unwelcome harassment" (3) which was "based on sex" and (4) "sufficiently severe or pervasive to alter the conditions of employment and create

18

an abusive working environment, and (5) [UWM] knew or should have known about the harassment and failed to act." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565 (6th Cir. 2021) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)) (brackets omitted). Memmer fails to allege facts in her Complaint to plausibly allege a hostile-work environment sexual harassment claim against UWM.[4]

With respect to the fourth element, "[h]arassment is 'severe or pervasive' when it 'alters the conditions of the victim's employment and creates an abusive working environment.'" *Id.* at 567 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To assess this element, "the court must consider all of the circumstances, including the frequency of the discriminatory conduct; its severity;

---

[4] The Court would reach the same conclusion even if it adopted the nonfrivolous standard for invoking the EFAA. The district courts applying this lower bar still required the plaintiff to allege facts to show actionable sexual harassment, as defined under federal, state, or tribal law. *See, e.g., Diaz-Roa*, 757 F. Supp. 3d at 542-46; *Owens*, 786 F. Supp. 3d. at 843-44; *Cardenas v. F.D. Thomas, Inc.*, No. 2:24-cv-01814, 2025 WL 418753, at *4 (E.D. Cal. Feb. 6, 2025). As discussed *infra*, under Title VII, "[f]or sexual harassment to be actionable under a hostile work environment theory, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Diaz-Roa*, 757 F. Supp. 3d at 544 (quoting *Meritor*, 477 U.S. at 65) (internal quotation marks, brackets, and additional citation omitted). As also discussed *infra*, the broker's conduct does not satisfy this definition, nor does any conduct Memmer describes. Notably, "the ELCRA requires a plaintiff to show that the harassing behavior is of a 'sexual nature,' not merely based on gender." *Hensman v. City of Riverview*, 316 F. App'x 412, 418 (6th Cir. 2009) (quoting Mich. Comp. Laws § 37.2103(i)). Memmer describes no conduct of a "sexual nature" in her filings.

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's performance."

*Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (cleaned up);

*see also Harris*, 510 U.S. at 23.  The harassment is judged from subjective and

objective standards.  *Id.*; *Nathan*, 992 F.3d at 568 (citing *Meritor*, 477 U.S. at 67).

It "must be severe or pervasive enough to create an environment that a reasonable

person would find hostile or abusive, and the victim must subjectively regard that

environment as abusive."  *Thornton*, 530 F.3d at 455 (quoting *Jackson v. Quanex*

*Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)).  The Sixth Circuit has set "a relatively

high bar for what amounts to actionable discriminatory conduct under a hostile

work environment theory."  *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485-86 (6th

Cir. 2020) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)).

In her Complaint, Memmer premises her sexual harassment claims solely on

an email communication or communications from a broker in which the broker

stated "that [Memmer] was too pretty to be an underwriter and that he was going to

tell her CEO Matt Ishbia to make her a model for the company."[5]  (ECF No. 1 at

---

[5] Memmer argues in her supplemental brief that other alleged unlawful conduct, such as her alleged retaliatory termination, is "related to" her reporting of the sexual harassment by the broker.  (*See* ECF No. 31 at PageID.345.)  Putting aside the question of whether Memmer even alleges such retaliation, even if the two "claims" are related, Memmer does not premise her sexual harassment claim on the alleged retaliatory termination in her Complaint.

PageID.5 ¶ 35; *see also id.* at PageID.26-27 ¶¶ 229, 242.)  In response to UWM's

motion to dismiss, Memmer similarly focuses on "*this* conduct" as that which

"created an intimidating and hostile work environment," and she identifies no other

conduct as "sexual harassment."  (ECF No. 25 at PageID.284 (emphasis added).)

Memmer alleges no facts to suggest that this conduct was frequent or that it

unreasonably interfered with her work performance.  Objectively, it was not

severe, physically threatening, or humiliating.  It falls short of the "high bar" for a

hostile work environment.  *See Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784,

792 (6th Cir. 2000) (finding allegations, including a male supervisor's sexual

advances and several lewd jokes about the plaintiff's appearance, including calling

her "hot lips," not severe or pervasive enough to state a sexual harassment claim);

*Rayford v. Illinois Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012) (finding comments

made to a male employee three or four times per week, such as being called "sweet

booty" and being told a co-worker "wanted to mix coffee with his cream" were not

so severe and pervasive that a reasonable person would find his work environment

hostile and abusive); *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 119

(6th Cir. 2003) (finding facts insufficient to support a hostile work environment

which included the plant superintendent telling the plaintiff "she was too pretty to

be working here" and attempting to pat her on the buttocks as she climbed onto a

forklift); *Crowe v. Ohio Dep't of Rehab. & Corr.*, Nos. 98-4024, 98-4126, 1999

21

WL 717947, at * (6th Cir. Sept. 10, 1999) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) ("holding that supervisor's actions—calling the plaintiff 'pretty girl,' making grunting sounds when plaintiff wore a leather skirt, saying 'all pretty girls run around naked,' and saying that with 'so many pretty girls,' he 'didn't want to lose control'—did not constitute sexual harassment")).

Citing *Iqbal*, 556 U.S. at 678, Memmer argues in her supplemental brief that she need not "specifically plead facts that could support" her claim.  (ECF No. 31 at PageID.340.)  Relying on *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), she claims that "[s]pecific facts are not necessary."  (ECF No. 31 at PageID.340.)  But what the Supreme Court stated in *Iqbal*, as Memmer acknowledged in her parenthetical when citing the decision, is that the plaintiff need not provide "*detailed* factual allegations."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (emphasis added).  Still, the plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  They must be enough "to state a claim to relief that is plausible on its face." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

As the *Iqbal* Court further noted, when confronted with a motion to dismiss "mere conclusory statements[] do not suffice."  556 U.S. at 678.  Thus, even if the Court considered Memmer's vague allegations in her EEOC charge that "[b]rokers

22

would continuously watch [her] u-snap recorded videos at odd times of the night over and over again" and that she was subjected to "sexual harassment on multiple occasions" (*see* ECF No. 31 at PageID.343 (quoting ECF No. 9-1 at PageID.108)), this would not render her sexual harassment claims more plausible.  Memmer's attempt in her supplemental brief to state a plausible sexual harassment claim based on the conduct she alleged to support her pregnancy discrimination claims also fails.

As discussed earlier, gender-based discrimination and sexual harassment are distinct.  Harassment is a form of discrimination; however, not all discrimination constitutes harassment.  In her Complaint, Memmer alleges a discrete act of discrimination based on her pregnancy, not harassment because of her pregnancy.[6] But even if the Court considered the alleged conduct Memmer describes as the basis for her pregnancy discrimination claims as part of the circumstances in assessing whether she alleges "sexual harassment," it would still find that she has not cleared the Sixth Circuit's "high bar" for alleging unlawful conduct under Title VII or ELCRA.  The conduct was not severe, pervasive, or physical.

---

[6] Discrimination based on pregnancy is a form of sex discrimination.  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (citations omitted).  Nevertheless, offensive conduct forming the basis for a sexual harassment claim must be some kind of harassment or there would be no difference between sexual discrimination and sexual harassment claims.

Memmer also fails to allege facts to support the final requirement of her sexual harassment claim if Creager was "a mid-level employee[,]" "not Human Resources, not management," to whom she made "a single, informal remark" concerning the broker's conduct, as Memmer asserts in her supplemental brief. (ECF No. 25 at PageID.293, 296.)  Even if a liberal construction of Memmer's pleading suggests the broker was an employee of UWM,[7] Memmer has not claimed that he was a supervisor or UWM official.  Thus, to hold UWM liable for the broker's conduct, Memmer must allege facts suggesting that UWM "knew or should have known of the charged sexual harassment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999).  She fails to allege such facts in her pleading or even in her briefs.

---

[7] It is unclear whether the broker was a UWM employee or agent, and Memmer's sexual harassment claim against UWM for his alleged conduct is even more tenuous if he was not. *See Bivens*, 147 F.3d at 643, 645 (indicating that an employer's liability for harassment by a customer or any other non-agent requires the plaintiff to show that the employer " 'intended' for the relevant unlawful 'consequence'—here, her harassment—to occur").  In her Complaint, Memmer alleges vaguely that the broker "worked for" UWM.  (ECF No. 1 at PageID.26.)  In response to UWM's motion to dismiss, she refers to the broker as "an agent of UWM" but also as a "non-employee[.]"  (ECF No. 25 at PageID.284, 292.)  No facts are provided, however, to suggest an agency relationship—that is, mutual consent that the broker would act on UWM's behalf and subject to its control. *See Bivens*, 147 F.4th at 644.  Only after the Court asked for supplemental briefing as to *inter alia* the impact of *Bivens* on the viability of her claims, did Memmer assert that the broker was an employee.  (ECF No. 31 at PageID.349.)

24

## IV.  Conclusion

In summary, the Court finds that Memmer's sexual harassment claims arose after the EFAA's enactment.  The Court finds it unnecessary to decide when the sexual harassment dispute between Memmer and UWM arose, however.  Even if the dispute arose after the EFAA's enactment, the statute does not apply unless Memmer has alleged a plausible sexual harassment claim or at least "sexual harassment" under Title VII or ELCRA.  Concluding that Memmer does not, the Court finds EFAA inapplicable.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and to Dismiss the Complaint (ECF No. 24 ) is **GRANTED**.[8]

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 27, 2026

---

[8] No party has moved or asked the Court to stay the proceedings pending arbitration pursuant to 9 U.S.C. § 3.  Therefore, the Court concludes that a stay is not required under the Supreme Court's decision in *Smith v. Spizzirri*, 601 U.S. 472 (2024).  *See Modern Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025) (finding that *Spizzirri* applies only where a party has requested a stay of the court proceedings pending arbitration and, absent a request, the matter may be dismissed); *Wallrich v. Samsung Elec. Am., Inc.*, 106 F.4th 609 617 (7th Cir. 2024) (holding that "*Spizzirri* merely held that a district court must issue a stay (rather than dismiss a case) when a party requests a stay under § 3" and that dismissal is the proper action when no request is made); *Tucker v. United Wholesale Mortg., Inc.*, No. 23-cv-13134, 2024 WL 5629335, at *4 n.2 (E.D. Mich. July 10, 2024) (same), *aff'd*, No. 24-1595, 2025 WL 1082316 (6th Cir. Apr. 10, 2025).

25